# CHESTER S. NELSON v. NATIONAL CASUALTY COMPANY AND ANOTHER.[1]

December 20, 1929.

No. 27,456.

[1]Reported in 228 N. W. 437.

54

*Maugridge S. Robb and O. W. Osnes,* for appellant.
*H. L. Hoidale* and *Patterson & Rorem,* for respondents.

OLSEN, C.

Plaintiff brought this suit against the defendants, National Casualty Company and Charles S. Eaton, for damages. For brevity the casualty company will hereafter be referred to as the company and defendant Eaton as defendant. Plaintiff alleged three causes of action in his complaint: First, for false imprisonment; second, for malicious prosecution; third, for abuse of process. All causes of action are based on one and the same criminal prosecution. At the close of the trial the court dismissed the suit on the merits as against the company. A verdict was returned against the defendant Eaton. On his subsequent motion in the alternative for judgment notwithstanding the verdict or a new trial, the court set the verdict aside and granted judgment in his favor. Plaintiff at the same time made a motion for a new trial as to the defendant company, and the court denied the motion. From the two orders so made plaintiff appeals.

The company was engaged in the health and accident insurance business. It is a Michigan corporation with home office at Detroit in that state but licensed also to do business and doing business in this and other states. Defendant was one of its agents and operated an office in Minneapolis. Just what his contract with the company was and the exact extent of his authority do not clearly appear and are not here important. It does appear that he had assigned to him certain territory, including this state, and had the exclusive right to solicit and write insurance for the company in such territory and to collect first and renewal premiums therefor; that he had the right to and did hire and discharge solicitors to

travel and solicit applications for insurance and collect premiums in his territory, and that such solicitors reported to and were responsible to him. His compensation was a commission on the premiums, and the compensation of the solicitors was the full commission on first premiums and an agreed part of the commission on renewal premiums collected by them. Defendant was responsible to the company for all first premiums, less commission, on insurance written by him and for any renewal premiums, less commissions, collected by him or his solicitors. Plaintiff was one of the solicitors so employed for more than two years.

None of the officers or agents of the company, except defendant, took any part in or had anything to do with the criminal prosecution in question nor had any information or knowledge thereof. It follows that if the court was right in ordering judgment in favor of defendant there can be no recovery against the company. The court granted the motion for judgment in favor of defendant on two grounds: First, that the evidence showed as a matter of law that the prosecution was not without probable cause; second, that the termination of the prosecution was brought about by a compromise and agreement between plaintiff and defendant, procured by the initiative and efforts of the plaintiff, so that there was no termination thereof in plaintiff's favor. If the court was right on either ground its order must stand.

■ The evidence as to how the criminal prosecution terminated is practically undisputed. Plaintiff waived examination in the municipal court, was bound over to the district court, pleaded not guilty, and was released without bail on the assurance of his attorney that he would be responsible for his appearance for trial, or whenever required. He and his attorney at once sought out defendant, and a conference was then had in the office of defendant's attorneys. This all took place on the same day that plaintiff was brought to Minneapolis to answer the criminal charge, September 18, 1924.

Plaintiff and his attorney and defendant and his attorneys all took part in the conference. The criminal complaint and warrant charged plaintiff with the larceny of $85, collected by him from one

Hegna as an insurance premium upon an application for insurance, which plaintiff had appropriated to his own use and failed to report or account for. Defendant had other charges and claims against plaintiff, one for $779.79 on a promissory note given to him by plaintiff on March 19, 1924, to cover insurance premiums collected by or for which plaintiff was responsible at that time; also a claim for $991.95 on account of insurance premiums collected by or for which plaintiff was responsible since the time the note was given. A material part of this last mentioned sum was claimed by defendant to have been misappropriated by plaintiff. A civil action had been brought and was pending to recover this last mentioned sum. This claim and suit did not include the $85 item involved in the criminal prosecution. At the conference the entire indebtedness of plaintiff to defendant was discussed and considered, and an agreement was reached that plaintiff should pay defendant $1,108.11 in addition to the note mentioned. This included the $85 item involved in the criminal case. Plaintiff at the time the note mentioned was given had given defendant as security therefor an assignment of an interest he had in an estate, not yet determined. At this conference he gave an additional assignment of such interest to secure this additional indebtedness of $1,108.11.

The evidence as to what was said at this conference leads to but one conclusion—that the purpose of the settlement, on the part of plaintiff and his attorney, was to get the criminal prosecution dropped or dismissed; that it was so understood and impliedly consented to by all the parties. Plaintiff testified that he was given to understand that the prosecution would be dropped and that he acquiesced. His attorney testified that he said, "Well, if this is a question of paying up this account, the least you can do is to see that Chester is released if this thing is disposed of. That is what I am here for." He further testified that defendant said he would see to it that Chester was released if he paid the money. Discussion was then and thereafter had as to what should be done to get the prosecution dismissed or dropped by the county attorney. Plaintiff did not have the money to make payment at that time. The criminal case was set for trial on October 1, 1924, but was

reset from time to time for some two months. The court record shows that plaintiff was present each time but does not show why the case was reset nor that there was any objection thereto. Plaintiff completed his payments on November 24, 1924, and on that day or the next consultation was had by the parties with the county attorney about dismissing the prosecution. At his suggestion defendant agreed to and did write him a letter stating in substance that full restitution had been made; that there might be a question as to plaintiff's criminal intent in appropriating the money; and requesting that the case be dismissed. Shortly thereafter the county attorney dismissed the case. The fact that defendant's attorney made the statement that he and his client could not and would not consent to any compromise or settlement of a criminal charge or case does not change the result of what was actually done and intended by plaintiff and defendant.

The rule is stated in Wickstrom v. Swanson, 107 Minn. 482, 120 N. W. 1090, that where the termination of the prosecution has been brought about by the procurement of the defendant or by compromise or agreement of the parties an action for malicious prosecution cannot be maintained. The evidence in the present case is fully as conclusive as in that case. For lists of cases following this rule see 38 C. J. p. 443, note 12; p. 444, note 13; p. 445, note 19; Waters v. Winn, 142 Ga. 138, 82 S. E. 537, Ann. Cas. 1915D, 1248, L. R. A. 1915A, p. 601, and note.

■ Probable cause does not depend upon the guilt or innocence of the person accused. Probable cause is an honest belief on the part of the prosecutor in the guilt of the accused, based on reasonable grounds. It has often been defined by this court as "a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person is guilty of the offense."

Plaintiff, while in defendant's employ and soliciting insurance in his territory, received an application from one Hegna and collected the premium of $85 therefor. He did not report the application or turn in any part of the premium. Shortly thereafter he was discharged from his employment. He left this state and went to

Omaha, Nebraska, without reporting the application or accounting for the money collected. The time for reporting the application expired. Hegna then came to defendant's office and reported that he had made the application and paid the money but had received no policy, which was the first information defendant had about the matter. Hegna had plaintiff's receipt for the money and the canceled check whereby it was paid. Defendant offered then to issue the policy, but Hegna refused and demanded return of his money, and it was repaid to him by defendant. Three or four other complaints about premiums collected by plaintiff were received by defendant shortly before that time, which items are included in the $991.95 claim before referred to. In that situation defendant, after consultation with his attorney and the county attorney, made the criminal complaint. The court did not base its orders on the defense of advice of counsel, and we do not here consider that question. In the situation presented, we agree with the trial court that as a matter of law want of probable cause was not shown.

In an effort to prove want of probable cause plaintiff testified that he took the Hegna application with him to Omaha and there placed it with the Omaha agent of the company, whose territory included Nebraska and two adjoining states, and that he caused a policy to Hegna to be issued there. This policy appears to have been sent in to the home office at Detroit for approval and was either there disapproved or else refused by Hegna. It did not become effective and was not paid for. Plaintiff testified he believed he had the right to transfer this application from the Minneapolis office, in which territory it was taken, to the Omaha office. His belief in that respect is not the test here. While defendant may have known that plaintiff had gone to Omaha, he had no knowledge or information that plaintiff was employed by or soliciting insurance for the office there or that he had sought to transfer this application to that office.

■ The cause of action for false imprisonment is based on the fact that in the complaint, warrant and information plaintiff was named as Charles Nelson instead of his true name, Chester S. Nelson. This error in the name is but an amendable irregularity under

our statute and practice. G. S. 1923 (2 Mason, 1927) § 10642. Plaintiff made no such objection either in the municipal court or district court and waived the irregularity.

■ Abuse of process was not submitted to the jury as a distinct question. No request to submit such question was presented and no exception taken. 1 R. C. L. p. 103, states:

"The test is probably whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do. As to the result of an abuse of process that will support an action, it seems that there must be either an injury to the person or to property. Mere indirect injury to a person's business or to his good name is not sufficient."

A favorable termination of the suit may or may not be necessary, depending on the nature of the proceeding. Pixley v. Reed, 26 Minn. 80, 1 N. W. 800; Grimestad v. Lofgren, 105 Minn. 286, 117 N. W. 515, 17 L.R.A.(N.S.) 990, 127 A. S. R. 566; Martin v. Cedar Lake Ice Co. 145 Minn. 452, 177 N. W. 631.

Here the plaintiff, by his own initiative and effort, procured a settlement and dismissal of the criminal case. Defendant took no action or steps to procure a settlement, except such as was done at plaintiff's invitation and request. As a result of the settlement plaintiff paid an indebtedness owing by him to defendant. He was not coerced or compelled to do anything unlawful or wrongful. The evidence fails to sustain any cause of action for abuse of process.

The two orders appealed from are affirmed.