471 A.2d 297

## PALMER FORD, INC.

v.

## Franklin E. WOOD.

## No. 22, Sept. Term, 1983.

Court of Appeals of Maryland.

Feb. 8, 1984.

Motion for Reconsideration Denied
March 5 and 9, 1984.

Albert D. Brault, Rockville (Charles C. Bowie, Janet S. Zigler and Brault, Graham, Scott & Brault, Rockville, on the brief), for appellant.

Arthur M. Wagman, Rockville (Wagman & Moldawer, P.A., Rockville, on the brief), for appellee.

Argued Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

RODOWSKY, Judge.

Whether the defendant was entitled to a directed verdict is the issue presented in this malicious prosecution and abuse of process suit. With respect to the malicious prosecution claim the argument focuses on the legal sufficiency of the evidence to prove the absence of probable cause. As to that

element of the tort the plaintiff's case rests entirely on the dismissal by a judge in the District Court of Maryland of all criminal charges against the plaintiff at hearings which, inferentially, were in the nature of preliminary hearings. The question presented here is whether the fact of that dismissal made the probable cause issue one to be decided by the jury when all of the other evidence in the civil case, directly proving the facts known to the defendant at the time criminal charges were initiated, is uncontradicted and would establish probable cause as a matter of law but for the possible effect to be given to the dismissal. Analysis of the malicious prosecution decisions of this Court dealing with the respective functions of judge and jury in the determination of probable cause where the evidence is conflicting on that issue reveals two seemingly contradictory lines of cases. One of these lines states the principle that it is the judge's function to decide whether the facts as found by the jury constitute a want of probable cause. Under the other line of cases the jury is said to make the ultimate determination whether or not the facts found by it constitute probable cause. This second line of cases has not distinguished the jury's more limited role in malicious prosecution actions from the function of the jury in negligence cases. If the dismissal in the instant matter is treated as evidence of a lack of probable cause sufficient to support a verdict for the plaintiff in the face of direct and otherwise uncontradicted evidence of probable cause, the ultimate determination of probable cause would be transferred from court to jury. Because this effect is contrary to the law of malicious prosecution, we shall reverse without a new trial on the malicious prosecution claim.

On the abuse of process claim we shall conclude that the defendant was not entitled to a directed verdict. There was sufficient evidence of the defendant's improper purpose in initiating the criminal prosecution and of willful misuse of the process, as a threat in the collection of a debt. A new trial on damages on this claim will be ordered.

Plaintiff in the trial court and respondent here is Franklin E. Wood (Wood or Plaintiff). In the early spring of 1977 Wood was a 20-year-old, part-time, college student who worked full-time in the evening. His parents were divorced and he lived with his mother. He was also the attentive owner of a 1970 Mustang convertible which was in need of major repairs. On April 3, 1977 Wood took the car for service to the petitioner, Palmer Ford, Inc. (Palmer Ford), the defendant in this civil litigation. Palmer Ford, in writing, estimated that the work which Wood initially requested would cost $400. Wood was prepared to pay this amount because he had obtained $400 from his father to have the Mustang repaired. On a nearly daily basis Wood went to the repair shop at Palmer Ford and watched the progress of the work. One of Palmer Ford's mechanics suggested that the car needed additional work, which Wood authorized, but Wood said he could not pay more than an additional $150, or $200 at the very most. No modified, written estimate was furnished.

When Wood was advised on April 11 that work on his car was completed, he went to Palmer Ford and was presented with a bill for $924. He was "shocked" and "outraged" and was unable to pay for the release of his car. At his place of employment that evening Wood received a telephone call from an individual who did not identify himself, but whom Wood identified at the civil trial as Danny Jones (Jones), a supervisory employee in the service department at Palmer Ford.[1] The caller sympathized with Wood's financial predicament and offered to give Wood his car for $400. Wood hung up. The following day, April 12, Wood was back in the shop at Palmer Ford where he received another telephone call from the same person. Wood was told that if, at noon on the next day, Wood placed $400 under the trash can in the men's room adjacent to the new car showroom at Palmer

---

1. Jones was responsible for scheduling jobs among the various mechanics in the service department. His particular work station was called the "tower" and Jones was known as the "tower operator."

Ford, he would find under the trash can the bills totaling $924, stamped "PAID," together with the keys to his car. Wood returned to Palmer Ford the next day, April 13. At noon he went to the men's room, found receipted bills for the work on his car and his car keys under the trash can, placed $400 in cash under the trash can, went to his car and drove it away.

A few days later Wood brought the car back to Palmer Ford in order to complain that the car's heater was overheating and that Palmer Ford should replace it. Wood was met in the service lane by Jones who told Wood that Palmer Ford was not responsible for the car in any way and that Wood was "to get the hell out of there." Wood left.

About one week after the April 13 exchange had been effected under the trash can, the clutch on Wood's Mustang "went out" and he had the car towed to Palmer Ford. That evening, or the next day, Wood was telephoned by John Kirby (Kirby), the comptroller of Palmer Ford. Kirby said that Palmer Ford had no record of having been paid by Wood for the $924 of repairs. Kirby wanted to know how Wood had gotten possession of the Mustang and asked Wood to come to Palmer Ford to discuss the matter. Wood told Kirby that Wood had paid for the repairs and had receipts. Nevertheless Wood met with Kirby in the latter's office at Palmer Ford the next day. Also present was Palmer Ford's service manager, Frederick L. Gilpin (Gilpin). Kirby at that time had the receipted bills. There was evidence that Gilpin had found the receipts in Wood's car after it had been towed to Palmer Ford. By the time of the meeting, charges for the towing and for work on the clutch had increased Wood's balance with Palmer Ford to $952.25. According to Wood, Kirby said that Palmer Ford was not interested in prosecuting and that, if Wood would tell Kirby everything that had happened, Palmer Ford would arrange some kind of a payment schedule. Wood told Kirby and Gilpin "the entire story." Kirby responded that he did not at that time know if Palmer Ford would deduct $400 from the bill or whether Wood would have to pay the entire balance. The next day

Kirby telephoned Wood to say that the entire $952.25 would have to be paid. Under Wood's testimony, this conversation occurred about Friday or Saturday, April 22 or 23.

On Friday, April 22 Kirby dictated a letter, which was typed and dated April 25, 1977, to Wood's father, requesting him to meet with Kirby to discuss "the method used to obtain [Wood's] vehicle when the work was completed" at Palmer Ford. No meeting with Wood's father was held due to his illness. Kirby had also telephoned Wood's mother, Mrs. Marilyn Wood, to arrange a meeting with her. According to Mrs. Wood, that meeting took place sometime in the period April 23 to April 27, and certainly before April 28. Kirby said that Palmer Ford needed the money for the repairs to her son's car or her son would go to jail. Mrs. Wood told Kirby that she did not want her son arrested or going to jail, and that she would get the money by borrowing it from her credit union.

On April 26, 1977 Pfc. Marvin R. Marks (Marks) of the Prince George's County police was contacted by Kirby and asked to come to Palmer Ford. Marks had been investigating a January 1977 breaking and entry at Palmer Ford as well as some later incidents of theft from, and vandalizing of, automobiles stored on the fenced, back lot at Palmer Ford. Although Marks died prior to the trial in the case *sub judice,* his written reports concerning the Wood incident were admitted into evidence. These reflect that Kirby told Marks that Wood had placed $400 under the trash can in exchange for receipts and keys. The reports state that Kirby "indicat[ed] that he was in favor of prosecution."

Following his conversation with Kirby, Marks consulted with an Assistant State's Attorney for Prince George's County and was advised that the proper charge to be levied was embezzlement. On April 27, 1977 at 1:00 p.m. Marks arrested Wood. The statement of charges, signed and sworn to by Marks and dated April 27, charges embezzlement of $924 from Palmer Ford. At about 2:00 p.m. on April 27

Marks questioned Wood and obtained a signed statement, written in Wood's own hand, which again described the telephone calls and the exchange. In his statement Wood said that he did not recognize the voice of the caller but that he thought it was Jones because of certain behavior of Jones which was set forth in the statement.

The last day that Jones had reported for work at Palmer Ford was April 25. He returned to Palmer Ford on the morning of April 28 and said he had resigned. Kirby contacted Marks to advise that the "suspect" (Jones) was on the premises. Marks asked Jones to come to the police station for questioning. Jones denied any knowledge of the embezzlement. No charges have ever been brought against Jones in connection with the Wood incident.

On May 3, 1977 Mrs. Wood delivered to Kirby at Palmer Ford a check from her credit union in the amount of $952.25 and obtained a receipt specifying that the payment applied to the orders for work on the Mustang. Mrs. Wood testified that she said to Kirby " 'I presume that this arrest business is all going to be over with,' " and that he replied, " 'Yes. All we want is our money.' "

Kirby's testimony in substance was that he left the criminal prosecution in the hands of Marks and of the State's Attorney's office. The police reports reflect that Marks knew that there had been a full recovery by Palmer Ford.

The record before us is sketchy at best concerning the criminal prosecution. For reasons unknown to us neither party in the civil action introduced the docket entries, the court file or the transcript of any of the proceedings in the criminal case against Wood. What transpired is gleaned from Wood's testimony and from certain exhibits. A hearing in the criminal case was set before the District Court for June 2, 1977, but there was no trial. At that time the charging document was amended by interlineation from an accusation of embezzlement of $924 in violation of Md.Code

(1957, 1976 Repl.Vol.), Art. 27, § 129 to a charge that Wood had obtained that sum by false pretenses in violation of Art. 27, § 140.[2] There were postponements from July 27 and September 15 to October 13. Wood appeared in District Court on October 13 but did not go to trial. He testified that there was "a hearing of some sort" and he was "rearrested" at that time. Plaintiff's exhibits in the instant civil case include two criminal informations, each of which bears the certification of a Prince George's County deputy sheriff that it was served on Wood on October 13, 1977 at the "Hyattsville Court." One information charged larceny by Wood from Palmer Ford on April 13, 1977 of assorted auto parts valued at $357.55. The other information charged unauthorized use of the Mustang on that date by Wood from the custody of Palmer Ford. Trial was rescheduled to February 15, 1978.

Wood testified that he did not go to trial on February 15, 1978 but that the "charges were dropped."[3] The arrest record from the Prince George's County Police Department, which was put in evidence in the subject civil case, reflects that on October 13, 1977 Wood "[p]lead not guilty to Grand

---

**2.** All references to Md.Code are to the 1957 edition and 1976 replacement volume, unless otherwise noted.

**3.** Testimony by Wood in an attempt further to elaborate on the disposition of the charges on February 15, 1978 was stricken, at least in part, by the trial court. The transcript reads:

[COUNSEL FOR WOOD]: What, if anything, happened to the two charges of grand larceny and unauthorized use of automobile that had been levied against you?

[WOOD]: Well, I believe, again, as usual, at this time they decided they weren't the proper charges, and the Judge intervened, I remember—it was a Judge Woods who intervened, even though we really weren't at trial, but he said that I had committed no crime.

[DEFENSE COUNSEL]: Objection. I didn't know we were going to get into hearsay.

THE COURT: Sustained.

. . . .

Ladies and Gentlemen disregard that statement.

Larceny" and that on February 15, 1978 he was "[f]ound NOT GUILTY."[4]

Wood sued Palmer Ford for damages. After certain discovery, including the taking of Wood's deposition, Palmer Ford moved for summary judgment which was granted on both the malicious prosecution and abuse of process claims. The Court of Special Appeals reversed. *Wood v. Palmer Ford, Inc.,* 47 Md.App. 692, 425 A.2d 671 (1981). That opinion emphasized that, because the appeal was from the granting of a summary judgment, the "burden of demonstrating clearly the absence of any genuine issue of fact is here on Palmer [Ford] as the moving party." *Id.* at 697, 425 A.2d at 675. It was held that Palmer Ford had "not [met] its burden of demonstrating clearly the absence of any genuine issue of fact concerning the institution of the criminal proceedings." *Id.* at 702, 425 A.2d at 677. The intermediate appellate court reasoned as follows:

> The facts and inferences to be drawn therefrom, pertinent to the element of probable cause, are in this case not so clear and undisputed as to allow the existence of want of probable cause to be a question of law for the court. It is by no means plain from the record before us how and why the changes in the charges were from time to time made. It is undisputed that the proceedings terminated in favor of Wood, but the nature of the terminations is unknown. We think that it is a permissible inference from the record that Wood was discharged in proceedings comparable to a preliminary hearing, the judge passing on the sufficiency of the case to justify prosecution and finding it lacking. This inference supplies evidence of lack of probable cause and would defeat the motion for summary judgment. [*Id.* at 703–704, 425 A.2d at 678.]

---

4. The notation on the arrest record is in longhand and inferentially was made by an Assistant State's Attorney. It can be read to mean that there was an acquittal after trial on the merits. This conflict with Wood's testimony must be resolved in favor of the Plaintiff, because "[a]n acquittal after trial by either a magistrate or a court is not of itself evidence of lack of probable cause." *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 39, 128 A.2d 600, 604–605 (1957).

On trial after remand the case was submitted to the jury. The instructions gave the jury the general legal definition of probable cause and left it to the jury to apply that definition to the facts of the case. Palmer Ford took no exceptions relevant to that phase of the instructions. The verdict found Palmer Ford liable to Wood both for malicious prosecution and for abuse of process and awarded compensatory damages of $100,000 and punitive damages of $400,000. The verdict sheet furnished to the jury did not call upon the jury to allocate damages between the two claims in the event Palmer Ford were found liable on both. Palmer Ford's motion for judgment *n.o.v.* was denied but Wood accepted a remittitur which reduced compensatory damages to $25,000 and punitive damages to $100,000.

Palmer Ford appealed to the Court of Special Appeals where the judgment was affirmed. On the issue of probable cause the unreported appellate opinion states that "[t]here were innumerable facts in evidence from which the jury could reasonably infer that there was an absence of probable cause for the prosecution . . . . " We granted Palmer Ford's petition for certiorari. The "innumerable facts" referred to by the Court of Special Appeals are not set forth in its opinion. As we read the record, the reference necessarily is to the series of changes in the charges asserted against Wood and to the ultimate disposition, favorable to Wood, of all charges without trial on the merits.

## I.

### A.

■ One of the elements of malicious prosecution which a plaintiff has the burden of proving is the absence of probable cause for the underlying criminal proceeding. *See Exxon Corp. v. Kelly,* 281 Md. 689, 693, 381 A.2d 1146, 1149 (1978). We have defined probable cause in this context as " 'a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty.' " *Glad-*

*ding Chevrolet v. Fowler,* 264 Md. 499, 505, 287 A.2d 280, 284 (1972), quoting *Banks v. Montgomery Ward & Co., supra,* 212 Md. at 39, 128 A.2d at 604. In the case at hand it is uncontradicted that Wood told Kirby about Wood's having received the telephone calls and about Wood's having left $400 under the trash can in exchange for receipted bills and the keys to the Mustang. Wood testified that he told Kirby the full story. Kirby testified that he was told the above facts by Wood. Kirby said he gave those facts to Marks and that communication is confirmed by Marks' reports. Marks' reports also reflect that Wood told Marks the same facts. Wood's written statement that was given to Marks contains the same facts. Mrs. Wood testified Wood told her the same facts.

■ These facts reflect that a Palmer Ford employee, who was said by Wood to be Jones, probably committed embezzlement. Standing alone, these facts would warrant a cautious person in believing that Wood was aiding and abetting the employee. Wood appeared to be technically a principal in the second degree to embezzlement. Article 27, § 129 then provided in relevant part that

> [w]hosoever being . . . employed . . . in the capacity of a . . . servant . . . by any . . . body corporate shall fraudulently embezzle any money . . . which . . . shall be delivered to or received, or taken into possession by him, for or in the name or on account of his master or employer, shall be deemed to have feloniously stolen the same from his master or employer, although such money . . . was not received into the possession of such master or employer, otherwise than by the actual possession of his . . . servant . . . and being convicted thereof, shall be punished. . . .

Wood aided the apparent embezzlement by the surreptitious manner in which he delivered the $400 in cash in order to obtain possession of his car and of the fully receipted bills. Kirby was warranted in believing that the payment was made to a Palmer Ford employee because Wood told Marks that the telephone caller was Jones, because the receipted

invoices which Wood had obtained and which Kirby saw prior to initiating prosecution bore the Palmer Ford "PAID" stamp, and because the keys to the Mustang had been in Palmer Ford's possession. An individual who is not an employee of the victim of embezzlement may be guilty of embezzlement by aiding or abetting the employee who commits the crime as a principal in the first degree. *See United States v. Ray,* 688 F.2d 250 (4th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 829, 74 L.Ed.2d 1024 (1983); *United States v. Gregg,* 612 F.2d 43 (2d Cir.1979); *Gibbs v. State,* 37 Ariz. 273, 276, 293 P. 976, 977 (1930); *Garrett v. State,* 243 Ga. 322, 253 S.E.2d 741 (1979); *State v. Nahoum,* 172 La. 83, 133 So. 370 (1931); *Wood v. State,* 93 Okl.Cr. 282, 227 P.2d 424 (1951). *See also People v. Hess,* 104 Cal.App.2d 642, 234 P.2d 65, *appeal dismissed sub nom. Hess v. California,* 342 U.S. 880, 72 S.Ct. 177, 96 L.Ed. 661 (1951) (nongovernmental employee conspired to embezzle from state). Nor is it necessary for the principal in the first degree actually to have been convicted prior to prosecution of the aider or abettor. *See Funkhouser v. State,* 51 Md.App. 16, 18 n. 2, 440 A.2d 1114, 1116 n. 2, *cert. denied,* 293 Md. 331 (1982) (if at the trial of a principal in the second degree enough "evidence is adduced legally sufficient to show the guilt of the principal in the first degree" a principal in the second degree may be convicted before prosecution of the principal in the first degree).

For probable cause purposes the focus is on those facts known to, and genuinely believed by, the one initiating or continuing the prosecution when it is initiated or continued. *See Jordan v. James & Holstrom Piano Co.,* 140 Md. 207, 212–13, 117 A. 366, 369 (1922). Here there is no contention that Kirby did not honestly, and reasonably, believe what Wood told him, or that, during the time the prosecution was pending, Palmer Ford had learned of any facts which would alter that belief.

We need not analyze, in relation to the facts known to Palmer Ford, whether probable cause existed for believing that Wood had committed any of the other crimes with

which he was later charged. As far as Palmer Ford was concerned, it was a single prosecution and there is nothing in the record to suggest that Palmer Ford's agents had any part in making the technical distinctions between the closely related crimes in the sequence of charges. *See Jordan v. James & Holstrom Piano Co., supra,* 140 Md. at 213, 117 A. at 369.

But for the dismissal without trial of the charges against Wood, he failed as a matter of law to prove the absence of probable cause for the criminal prosecution against him.

### B.

Next, we shall assume, *arguendo,* that Plaintiff's evidence describing the dismissal permits an inference that the dismissal occurred at a hearing in the nature of a preliminary hearing.

In *Banks v. Montgomery Ward & Co., supra,* 212 Md. at 40, 128 A.2d at 605 we said that

> this Court . . . definitely has held that dismissal by a magistrate at a preliminary hearing is *prima facie* evidence of lack of probable cause. The defendant, of course, may rebut the inference.

*Norvell v. Safeway Stores, Inc.,* 212 Md. 14, 20–21, 128 A.2d 591, 594 (1957), expressed the rule to be that

> discharge by a magistrate on preliminary hearing may furnish some evidence of a want of probable cause, whereas acquittal after trial does not. There is some authority to the effect that even a discharge on preliminary hearing is not evidence of a want of probable cause, and, in the rule adopted by the *Restatement,* discharge only makes out a *prima facie* case where it is unexplained.

The prosecution in *Nance v. Gall,* 187 Md. 656, 669, 50 A.2d 120, 126 (1946), *modified,* 187 Md. 656, 674, 51 A.2d 535 (1947), "ended in a dismissal of the charge by a magistrate . . . ." *Nance* expresses the consequence as follows:

> This result of the hearing before the magistrate establishes the falsity of the charge, and supports an inference that

the prosecution was motivated by malice and want of probable cause. This inference could have been rebutted by proof that facts and circumstances, sufficiently strong in themselves, were known to defendants . . . such as to induce a cautious and careful man to believe [the malicious prosecution plaintiff] guilty of [the] charge . . . . [*Id.* at 669, 50 A.2d at 126.]

In *Straus v. Young,* 36 Md. 246, 255 (1872) "the discharge of the plaintiff by the examining magistrate" was said to be "*prima facie* evidence of the want of probable cause, sufficient to throw upon the defendant the burden of proving the contrary." While that case was an appeal by the defendant who argued that there was insufficient evidence of a want of probable cause, the Court rejected the argument by relying on both the "*prima facie* evidence" and on testimony from the plaintiff.

No malicious prosecution decision of this Court seems to have presented as starkly as does the instant case the question of the effect to be given dismissal at a preliminary hearing in the face of otherwise uncontradicted evidence establishing probable cause as a matter of law. Plaintiff essentially argues that the dismissal operates as substantive evidence which remains in the case throughout and which furnishes a legally sufficient basis for the verdict in his favor. Palmer Ford, while not explicitly arguing a bursting bubble theory, contends that there is a point at which the proof of probable cause is so strong that any presumption of a lack of probable cause must cease to operate. We believe that the answer is to be found principally in the division of the functions of judge and jury in an action of malicious prosecution. That division, however, has become blurred in some of the more recent decisions of this Court. Consequently, before reviewing the Maryland law, we shall look first to general common law.

### C.

Restatement (Second) of Torts § 673, "Function of Court and Jury," states the following rule (the A.L.I. Rule):

(1) In an action for malicious prosecution the court determines whether

. . . .

    (c) The defendant had probable cause for initiating or continuing the proceedings.

. . . .

(2) In an action for malicious prosecution, subject to the control of the court, the jury determines

    (a) The circumstances under which the proceedings were initiated in so far as this determination may be necessary to enable the court to determine whether the defendant had probable cause for initiating or continuing the proceedings . . . .

Comment *e* to § 673 further explains the A.L.I. Rule:

The respective functions of court and jury in actions for malicious prosecution differ in one important particular from their respective functions in other actions of tort in which, as in actions for negligence, the liability of the defendant depends upon the unreasonable character of his conduct. In passing upon this question someone must determine what the defendant did or failed to do and the circumstances under which his act or omission occurred; and someone, either court or jury, must determine whether, in the light of these circumstances, his conduct measured up to the standard of a reasonable man. In actions for negligence and other tort actions in which the liability of a defendant depends upon the unreasonable character of his conduct, both of these matters are determined by the jury, subject to the limitations stated in § 285, Comments *b* to *e.*

In actions for malicious prosecution, however, upon the issues of favorable termination and probable cause, the jury has only the function of finding the circumstances under which the defendant acted. The court determines whether, under those circumstances, the termination was sufficiently favorable to the accused, and whether the defendant had or had not probable cause. If there is no

conflict in the testimony as to what the circumstances were, the court has no need for a finding of the jury. The jury is not called upon to act unless there is a conflict in the testimony that presents an issue of fact for its determination.

The respective functions of the court and jury in determining the issue of probable cause can be exercised by them in one of two ways. The better but less usual method is to require the jury to find a special verdict setting forth the circumstances under which they find that the proceedings were initiated. Upon these findings the court then determines whether the defendant had probable cause. The usual method is for the court to charge the jury under what combination or combinations of circumstances, which may be found under the evidence, the defendant did or did not have probable cause for initiating the proceedings.

W. Prosser, *Handbook of the Law of Torts* 846–47 (4th ed. 1971) describes the general rule, and the reason underlying it, as follows:

The courts have always distrusted malicious prosecution actions, and have retained a strong hand over them. For this reason the existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. That is to say, the court will determine whether upon the appearances presented to the defendant, a reasonable man would have instituted the proceeding. The disingenuous reason sometimes is given, that since the authority to bring criminal prosecutions is derived from the law, it is for the law to determine what will constitute justification for it. If there are questions of fact in dispute, as to what appeared to the defendant or what he did or did not do, they are submitted to the jury for a special verdict, or under instructions declaring the issue of probable cause according to either version of the facts. The question is

then a "mixed one of law and fact." In many cases, where other issues are involved under a general verdict, the jury undoubtedly proceeds to determine probable cause to its own satisfaction. A few jurisdictions, particularly New York, have rejected the rule that probable cause is for the court, and have held that where more than one conclusion may be drawn as to the reasonableness of the defendant's conduct, the question is for the jury. [Footnotes omitted.]

*Accord:* 1 F. Harper & F. James, *Law of Torts* 319 n. 29 (1956) (citing, *inter alia, Jordan v. James & Holstrom Piano Co., supra,* as supporting the majority rule); Annot., 87 A.L.R.2d 183 (1963); Annot., 1915D L.R.A. 1; M. Newell, *A Treatise on the Law of Malicious Prosecution, False Imprisonment and the Abuse of Legal Process* 278–82 (1892). The A.L.I. Rule is also the English law. *See Herniman v. Smith,* [1938] A.C. 305; Clerk & Lindsell, *Torts* 867–70 (15th ed. 1982).

Standard Maryland works state that the majority rule is "clearly settled" as the law of Maryland. They also state that "[i]n [Maryland] practice the jury are instructed hypothetically upon the question, and are then left to determine from the evidence whether the facts thus hypothetically put to them, as constituting or not constituting [probable cause], are sufficiently proved." 1 J. Poe, *Pleading and Practice* 135–36 (1st ed. 1882) (footnotes omitted); *id.* at 150 (Tiffany 5th ed. 1925); *id.* at 244 (Sachs 6th ed. 1970).[5] However, a comment in Maryland State Bar Association, *Maryland Pattern Jury Instructions-Civil* § 13:4 (1977) states that "where the facts are in dispute, the question [of probable cause] is one of fact for the jury." The statement is supported by citation to *W.T. Grant Co. v. Guercio,* 249 Md. 181, 238 A.2d 855 (1968), which we shall discuss, *infra.*

---

**5.** The first and fifth editions of Poe cite to *Taylor on Evidence,* an English work. 1 P. Taylor, *Law of Evidence* 31–32 (11th ed. 1920) contains an exceptionally strong statement of the majority rule which is said to be "equally binding, however numerous and complicated the facts and inferences may be ...."

We turn now to an examination of this Court's decisions. As previously indicated, they are inconsistent. Maryland is by no means unique in this regard. The Annot., *supra,* 87 A.L.R.2d at 186, generalizes that

> the principles [applicable to the determination of probable cause in malicious prosecution actions] announced by the great majority of the courts are not those which . . . one would logically expect to be applicable to this type of question. Moreover, the failure to state and apply these principles precisely, and the confusion caused by courts failing to appreciate the consequences of their literal application, as well as a natural reluctance in many instances, to require rigid application, has left this area of practice in a state of uncertainty.

### D.

The leading early decision of this Court on probable cause in a malicious prosecution action, which we have cited in 29 subsequent cases, is the opinion by Judge (later Chief Judge) Alvey in *Boyd v. Cross,* 35 Md. 194 (1872). It affirmed the trial court which had instructed the jury that there was no evidence of malice or want of probable cause. On the functions of judge and jury in determining probable cause Judge Alvey wrote:

> The want of probable cause is a mixed question of law and fact. As to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury; but what will amount to the want of probable cause in any case, is a question of law for the court. The jury, in our practice, are always instructed hypothetically as to what constitutes probable cause, or the want of it, leaving to them to find the facts embraced in the hypothesis. [*Id.* at 197.]

The above-quoted language was repeated in *Cooper v. Utterbach,* 37 Md. 282, 317 (1873). The *Boyd* statement of the rule was viewed as "now the established doctrine, both in this country and in England," in *Stansbury v. Fogle,* 37 Md. 369, 386–87 (1873). And *see McWilliams v. Hoban,* 42 Md.

56, 65 (1875) (quoting from P. Taylor, *Law of Evidence, supra*), and *Medcalfe v. Brooklyn Life Insurance Co.,* 45 Md. 198, 205 (1876) (quoting *Boyd, supra,* and holding that the trial court properly rejected a requested instruction that probable cause was to be decided by the jury upon all the evidence in the case).

*Johns v. Marsh,* 52 Md. 323 (1879) supplies a further elaboration of the rule. Verdict and judgment had gone for the plaintiff. One of the defendant's appellate points was the refusal of his requested instruction that the verdict must be for him unless the jury found malice or a lack of probable cause. In affirming, the Court said (*id.* at 333–34):

But the prayer is defective in another particular. It required the jury to find, as a condition upon which they could render a verdict for the plaintiff, that the defendant had acted without reasonable and probable cause in instituting the criminal proceeding. Now, while it is perfectly well settled, that if there be reasonable or probable cause, to the knowledge and honest belief of the defendant, no malice, however flagrant or distinctly proved, will make the defendant liable, yet the question as to what does or does not amount to probable cause is not one to be submitted to the finding and conclusions of the jury. That question is one compounded of law and fact; and while the jury are required to find whether the facts alleged in support of the presence or absence of probable cause, and the inferences to be drawn therefrom, really exist, it is for the court to determine whether, upon the facts so found, there be probable cause or the want of it. ... In view of this well established principle, the prayer was properly rejected. . . .

To the same effect *see Thelin v. Dorsey,* 59 Md. 539, 545 (1883) (*"[B]ut what will amount to the want of probable cause in any case, is a question of law for the court."* (Emphasis in original)); *Hooper v. Vernon,* 74 Md. 136, 139, 21 A. 556, 557 (1891); *Campbell v. Baltimore & Ohio R. Co.,* 97 Md. 341, 344, 55 A. 532, 533 (1903); *Smith v. Brown,* 119 Md. 236, 247, 86 A. 609, 612 (1913); *Bishop v. Frantz,* 125

Md. 183, 190–91, 93 A. 412, 415 (1915); *Sappington v. Fairfax,* 135 Md. 186, 193, 108 A. 575, 578 (1919); *Goldstein v. Rau,* 147 Md. 6, 13, 127 A. 488, 491 (1925); *Stansbury v. Luttrell,* 152 Md. 553, 556–57, 137 A. 339, 340 (1927).

Although the majority rule was articulated in the Court's opinions with relative clarity from *Boyd* through the 1920's, confusion with the jury function in negligence cases had begun to appear in some of the decisions, while in other opinions the rule was expressed in a general way which was conducive to the distinction being overlooked. Perhaps the earliest illustration is *Bowen v. Tascoe,* 84 Md. 497, 36 A. 436 (1897), in which the verdict and judgment were for the plaintiff. The opinion analyzed the sufficiency of the evidence under a negligence case standard, did not cite any prior Maryland case setting forth the *Boyd* standard, and then reversed without a new trial. In *Chapman v. Nash,* 121 Md. 608, 610–12, 89 A. 117, 118–19 (1913) the opinion states both the negligence case standard and the *Boyd* rule, seemingly as compatible parts of a whole. Two decisions rendered prior to 1930 called the legal sufficiency of the evidence to prove a want of probable cause "a question which the court is authorized to decide." *See Jordan v. James & Holstrom Piano Co., supra,* 140 Md. at 210, 117 A. at 368 and *Dorsey v. Winters,* 143 Md. 399, 409, 122 A. 257, 261 (1923).

In 1946 *Nance v. Gall,* 187 Md. 656, 50 A.2d 120 was decided. Its phraseology of the rule was: "[I]f the evidence or the inferences to be drawn therefrom are disputed, it becomes a mixed question of law and fact, the court instructing the jury as to what in law is probable cause, or the want of probable cause, the jury finding the facts." *Id.* at 669–70, 50 A.2d at 126. This statement is completely consistent with *Boyd.* However, if one reads the words, "as to what in law is probable cause," to mean only an instruction which furnishes the jury with a legally correct definition of probable cause which the jury is then to apply to the facts as the jury finds them to be, the statement is inconsistent with *Boyd.* That reading would leave to the jury the ultimate

determination whether a given state of facts does or does not constitute probable cause.

For the next twenty years following *Nance v. Gall* the rule governing cases where the probable cause issue turned on disputed facts was expressed in various abbreviated forms, all of which were consistent with *Boyd* if read with the background of the earlier cases in mind. *See Kennedy v. Crouch,* 191 Md. 580, 590–91, 62 A.2d 582, 587 (1948) ("a mixed question of law and fact"); *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 175, 122 A.2d 457, 461 (1956) ("While the court must determine as a matter of law whether probable cause is established upon a given state of facts, where the facts are disputed the question may properly be submitted to the jury under adequate [hypothetical?] instructions."); *Banks v. Montgomery Ward & Co., supra,* 212 Md. at 42, 128 A.2d at 606 (quoting from *Kennedy v. Crouch, supra,* 191 Md. at 590, 62 A.2d at 587); *Jannenga v. Libernini,* 222 Md. 469, 473, 160 A.2d 795, 797 (1960) ("[I]f there were any dispute as to the evidence or inferences deducible therefrom, it would be a question for the jury under appropriate instructions by the court concerning the existence or lack of probable cause.").

A case in which the trial court had submitted probable cause to the jury under a general instruction of the negligence case type reached this Court in 1968. *Davis v. Quille,* 248 Md. 631, 237 A.2d 745 (1968). Only one error was argued by the plaintiff-appellant to have occurred, relating to an instruction that the jury could consider that a judicial officer had held the plaintiff for action of a grand jury. This Court held that "the action of the committing magistrate [was] a legitimate point to be considered by the jury on the question of whether the person instituting the criminal proceedings had probable cause for doing so." *Id.* at 635, 237 A.2d at 747. This statement is irreconcilable with earlier Maryland decisions. However, the role of judge and jury in determining probable cause was not argued and no Maryland precedent was cited in the opinion.

Language in conflict with the *Boyd* line also appears in *W.T. Grant Co. v. Guercio, supra,* 249 Md. 181, 238 A.2d 855, a defendant's appeal. Prejudicial error was said to have been committed when the trial court charged that the jury could find a want of probable cause based on the plaintiff's acquittal after trial on the merits in the criminal prosecution. Acquittal after trial is not in and of itself evidence of a lack of probable cause. The judgment was reversed and the case remanded. But the Court went on to say (*id.* at 187, 238 A.2d at 858–59):

> If the facts or inferences drawable from the "probable cause" that motivated a criminal charge are clear and undisputed, the question is one of law for the court, but if such facts or inferences are disputed, it is a question of fact for the jury. *Nance v. Gall,* 187 Md. 656, 50 A.2d 120 (1946), modified on other grounds, 187 Md. [656], 674, 51 A.2d 535 (1947). Also see *Jannenga v. Libernini,* 222 Md. 469, 160 A.2d 795 (1960); *Banks v. Montgomery Ward & Co., supra.* Cf. *Davis v. Quille,* 248 Md. 631, 237 A.2d 745 (1968). Moreover, when the facts are in dispute, the jury, after being instructed as to what constitutes "probable cause,"—see *Stansbury v. Fogle,* 37 Md. 369 (1873) and *Nance v. Gall, supra* [187 Md.], at p. 669 [50 A.2d 120]— should be left to determine its presence or absence.

> Under the circumstances of this case, we think it is clear that the question as to whether there was probable cause for the prosecution was one of fact and not of law. It follows that the court erred when it instructed the jury that it could infer "lack of probable cause from the acquittal" of the accused.

The first paragraph of this quote, read as a whole and including the references to *Stansbury v. Fogle* and to *Nance v. Gall,* is not inconsistent with the *Boyd* rule. The second paragraph is inconsistent.

However in *Durante v. Braun,* 263 Md. 685, 689, 284 A.2d 241, 243 (1971) the first sentence of the above-quoted passage from *W.T. Grant Co.,* without the qualifying second

sentence, was described as correctly stating the jury function in malicious prosecution actions. Appeal was from the granting of a directed verdict in favor of the defendant. This Court reversed. The *Durante* opinion contains the following passage:

> The trial judge correctly stated the respective roles of court and jury with relation to the issue of "probable cause" in a malicious prosecution action, paraphrasing what we said in *W.T. Grant Co. v. Guercio,* 249 Md. 181, 187, 238 A.2d 855 (1968), to the effect that:
>
>> "If the facts or inferences drawable from the 'probable cause' that motivated a criminal charge are clear and undisputed, the question is one of law for the court, but if such facts or inferences are disputed, it is a question of fact for the jury. [Citation of cases omitted]." 249 Md. at 187 [238 A.2d 855]. [263 Md. at 689, 284 A.2d at 243.]

*W.T. Grant Co., supra,* was the only case cited on jury function in either appellate brief in *Durante.*

The nature of the arguments presented in our most recent cases has not required attention to be directed precisely at the rule governing judge and jury functions on the probable cause issue in malicious prosecution actions. *Dicta* have tilted both ways. *See Brewer v. Mele,* 267 Md. 437, 447, 298 A.2d 156, 163 (1972) (stating the rule from *Banks,* a *Boyd* line case); *Gladding Chevrolet v. Fowler, supra,* 264 Md. at 506, 508, 287 A.2d at 284, 285 (quoting both a *Boyd* type rule from *Kennedy v. Crouch, supra,* and the sentence stating the negligence case rule from *W.T. Grant Co., supra* ); *Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 449, 340 A.2d 705, 710 (1975) (implying negligence case standard); and *Exxon Corp. v. Kelly, supra,* 281 Md. at 697–98, 381 A.2d at 1151 ("[W]here the facts are contested, however, whether they are proved is a question for the jury," citing *Banks* and *Kennedy,* both *supra,* in a case in which the plaintiff's proof contradicted the facts on which the defendant relied).

## E.

Before applying the foregoing review of Maryland decisions to the case at hand, some general observations seem appropriate. In all likelihood, a number of factors have produced the lack of precision, if not outright conflict, in the description of the jury's role in the determination of probable cause in malicious prosecution actions. We strongly suspect that trial counsel's familiarity with the jury function in negligence actions, together with the similarity of the legal criteria for negligence and for probable cause have led counsel to consider the jury function to be identical in both types of actions and to frame their requested instructions (if any) accordingly. *Maryland Pattern Jury Instructions-Civil, supra,* has certainly done nothing to discourage this approach. Indeed, submitting a general definition of probable cause to the jury in a malicious prosecution case, in the same manner that negligence is defined for the jury in that type of action, is superficially part of the modern practice of not granting hypothetical instructions. Further, absent proposed instructions from counsel to the contrary, there is no incentive for a trial judge to charge specifically whether or not various fact scenarios, from which the jury must make its finding of the true scenario, mount up to probable cause. As a result, those opinions which state a negligence case standard for the jury function as to probable cause in a malicious prosecution action have simply answered the appellate issues as presented in the framework of the way the cases were tried.

However, no Maryland decision has expressly overruled the *Boyd* line of cases. They remain the law of Maryland.

## F.

From all of the foregoing it follows that dismissal of the charges against Wood, before trial, cannot operate as evidence of a want of probable cause sufficient to have taken this case to the jury. To support this conclusion we need not label the connection between dismissal at preliminary hearing and lack of probable cause as either a "pre-

sumption" or an "inference,"[6] nor need we enter the thicket in which theories as to the operation of presumptions are ensnarled.

If the connection is an inference, which is the term used in *Nance v. Gall, supra,* 187 Md. at 669, 50 A.2d at 126, it does not furnish legally sufficient evidence because the facts on which Palmer Ford acted were uncontradicted. We have said that the existence of malice flowing from the want of probable cause is a permissible inference and not a presumption. *Wesko v. G.E.M., Inc.,* 272 Md. 192, 197–98, 321 A.2d 529, 532–33 (1974). That was a malicious use of civil process case in which the defendant, without probable cause, garnished the plaintiff's wages under a judgment that had been satisfied. All of the evidence bearing on the reasons for the writ's issuance was in the testimony of two witnesses called in the plaintiff's case. It was established, without contradiction, that the seizure was the result of a clerical mistake and had not been actuated by any improper motive. We affirmed judgment *n.o.v.* for the defendant because "any possible inference of malice had been negated" by uncontroverted testimony. *Id.* at 200, 321 A.2d at 534. An inference of a lack of probable cause would be analogous.

If the *"prima facie* evidence" of lack of probable cause referred to in *Banks v. Montgomery Ward & Co., supra,* 212 Md. at 40, 128 A.2d at 605, means that the connection is some form of presumption, it would not survive a motion for directed verdict in this case. Wood's own, uncontradicted testimony proves probable cause. It has been said that "[n]o party can claim the right of a presumption against his own admission under oath." *See Braselton v. Vokal,* 53 Cal.App. 582, 585, 200 P. 670, 671 (1921) (presumption of consideration

---

**6.** We use "presumption" in the sense of "an inference *required* by a rule of law to be drawn as to the existence of one fact from the existence of some other established basic fact or combination of facts." 1 S. Gard, *Jones on Evidence* 125 (6th ed. 1972). By "inference" we mean "the application of logic or rationalization indulged in to support certain deductions made from relevant evidence." *Id.* at 128.

based on recital in written instrument does not support finding of consideration in favor of plaintiff who testified there was none). And *see Colorado & Utah Coal Co. v. Rorex,* 149 Colo. 502, 369 P.2d 796 (1962) (trial court may not rely on presumption that public officer, an assessor, performed his duty where assessor testified obsolescence had not been considered, as legally required). In this respect, one may consider a hypothetical case in which it is essential that the plaintiff prove receipt by the defendant of a certain letter. There is testimony by the plaintiff that the letter was properly addressed, stamped and put in the United States mails. The plaintiff also testifies that, after the postman delivered the letter by placing it in the defendant's mailbox, the plaintiff stole the unopened letter. The defendant testifies that plaintiff later admitted the theft. There is a written confession given by the plaintiff to a postal inspector. There is no other evidence on the issue. Under such a state of facts, it could hardly be contended that a presumption of receipt by the defendant would generate a jury question concerning receipt.

In any event, we cannot be dealing with the kind of presumption which clears the hurdle of a directed verdict because the issue here involves probable cause in malicious prosecution. To give the connection the effect of legally sufficient evidence would go beyond having the jury determine disputes of fact and would place in the province of the jury determination of the ultimate legal question of probable cause. This is contrary to the *Boyd* rule in Maryland, to the common law, to the rule in a majority of American states, and to the A.L.I. position. Here dismissal by the District Court was a fact. The exchange under the trash can was also a fact. There was no material dispute concerning the facts on which Palmer Ford relied in initiating prosecution. Those facts present a question of law. They establish probable cause.

This analysis is consistent with § 663(1) of the Restatement (Second) of Torts which reads:

*In the absence of evidence of probable cause,* a discharge of the accused by a magistrate upon a preliminary hearing in the criminal proceeding is conclusive of the lack of probable cause unless it appears that the discharge was

(a) *not upon the merits,* or

(b) *based upon testimony offered by the accused at the hearing,* or

(c) *due to the misconduct of the magistrate.* [Emphasis added.]

Comment *c* to § 663(1) spells out more fully the significance of the above-italicized language.

(c) *Burden of Proof.* Unless one of the facts stated in Clauses (a), (b) and (c) appears upon the record of the proceedings, the burden is upon the defendant in the civil action to produce evidence of probable cause in order to escape the effect of a discharge in the criminal proceeding as evidence of a lack of probable cause. If nothing further appears than that the accused was discharged by a magistrate upon a preliminary hearing, the plaintiff is entitled to an instruction that the accuser did not have probable cause for initiating the proceedings. In this situation the defendant in the civil action has the burden of producing evidence showing the ground upon which he believed in the guilt of the accused. When this evidence is produced, however, the burden of persuading the court by a preponderance of the total evidence that these grounds were insufficient to justify the private prosecutor's belief in the guilt of the accused remains upon the accused. *If he fails to sustain this burden, he loses his case by a ruling of the court that the absence of probable cause has not been proved.* When, however, he produces evidence to sustain this burden, the discharge by the magistrate becomes completely immaterial on this issue and is no longer a matter that the court should take into account in determining the existence or nonexistence of probable cause. This is true since it is the function of the court to determine whether the accuser had probable cause for initiating the proceedings, and not merely to determine

whether the magistrate erred in dismissing the charge. [Emphasis added.]

Accordingly, Palmer Ford's motion for a directed verdict on the malicious prosecution claim should have been granted.

## II.

■ Palmer Ford also contends that its directed verdict motion was erroneously denied as to Plaintiff's abuse of process claim. "The tort of abuse of process occurs when a party has wilfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law." *Krashes v. White,* 275 Md. 549, 555, 341 A.2d 798, 802 (1975). This tort can arise out of the use of a criminal prosecution for the purpose of debt collection. *See* Annot., 27 A.L.R.3d 1202 (1969). In *Zablonsky v. Perkins,* 230 Md. 365, 370, 187 A.2d 314, 317 (1963), in which a malicious prosecution judgment was affirmed, the trial court had found that " 'the defendant, with the cooperation of [a trial magistrate], attempted to use the State's criminal process as a private collection agency.' " By way of *dictum* we said that "[t]his was a perversion of legal process to improper ends, which might give rise to an action for abuse of process." *Id.*

The essential elements of the abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. [Prosser, *supra,* at 857 (footnotes omitted).]

Mrs. Wood's testimony supports a finding that it was the purpose of Palmer Ford, acting through Kirby, to use the criminal proceedings to effect collection of the amount claimed from Wood for repairs to his car. The jury could find that Kirby had concluded by Friday, April 22, 1977, that

Wood did not then have the funds to pay the repair bill and that Kirby orchestrated a campaign to utilize the criminal process in order to obtain payment. Kirby's letter to Wood's father, with its emphasis on the manner in which Wood had obtained possession of the Mustang, indicates this conclusion. At about the same time, Kirby sought a meeting with Mrs. Wood at which it could be found as a fact that he presented an ultimatum—either the bill be paid or Wood would be prosecuted and possibly jailed.

From the standpoint of the second element of the tort, it has been held to be an improper use of criminal process for the creditor, or an officer of the law acting in concert with the creditor, to demand payment of a debt as a condition of the debtor's avoiding arrest, or further confinement, or further proceedings in a criminal prosecution. *See George v. Leonard,* 169 F.2d 177 (4th Cir.1948) (applying South Carolina law); *Sachs v. Levy,* 216 F.Supp. 44 (E.D.Pa.1963); *McGann v. Allen,* 105 Conn. 177, 134 A. 810 (1926); *McClenny v. Inverarity,* 80 Kan. 569, 103 P. 82 (1909); *Marlatte v. Weickgenant,* 147 Mich. 266, 110 N.W. 1061 (1907); *Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780 (1947); *Kitchens v. Barlow,* 250 Miss. 121, 164 So.2d 745 (1964); *Ellis v. Wellons,* 224 N.C. 269, 29 S.E.2d 884 (1944); *Ledford v. Smith,* 212 N.C. 447, 193 S.E. 722 (1937); *Foy v. Barry,* 87 A.D. 291, 84 N.Y.S. 335 (1903); and *Mullins v. Sanders,* 189 Va. 624, 54 S.E.2d 116 (1949). Thus we find Prosser, *supra,* at 857 summarizing that "[t]here is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." 1 Harper & James, *supra,* at 331 states:

If the process is employed from a bad or ulterior motive, the gist of the wrong is to be found in the uses to which the party procuring the process attempts to put it. If he is content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive. But the moment he attempts to attain some

collateral objective, outside the scope of the operation of the process employed, a tort has been consummated. The most common instance of the operation of this principle is an attempt to extort money from the person subjected to the process . . . . So also, a person using the processes of the criminal law to enforce payment of a debt is abusing legal process and is liable in damages. [Footnotes omitted.]

Palmer Ford's point is that there was no evidence that it committed any improper act *after* criminal process was first issued against Wood.[7] Maryland cases have recognized that it is the improper use of the process in a manner not contemplated by law, after process has been issued, that is the concern of this particular tort. *See Krashes v. White, supra; James v. Goldberg,* 256 Md. 520, 530, 261 A.2d 753, 759 (1970); *Walker v. American Security & Trust Co.,* 237 Md. 80, 87, 205 A.2d 302, 306 (1964); *Bartlett v. Christhilf,* 69 Md. 219, 230, 14 A. 518, 521 (1888); and *Herring v. Citizens Bank & Trust Co.,* 21 Md.App. 517, 531, 321 A.2d 182, 189, *cert. denied,* 272 Md. 742 (1974). None of these Maryland cases involved use of criminal prosecution as a coercive tactic in the collection of a debt.

As Palmer Ford views the record, this case is one in which the creditor, after initiating a criminal prosecution, even if done with the intent of producing payment, passively allowed the prosecution to proceed in the hands of public authorities. Under such circumstances, there is nothing improper in the creditor's accepting payment of the debt or a return of his property. *See Smith v. Nelson,* 255 Ark. 641, 501 S.W.2d 769 (1973); *Vasseur v. Eunice Superette, Inc.,* 386 So.2d 692 (La.App.), *cert. denied,* 393 So.2d 747 (La.

---

**7.** While arrest is not an element of abuse of criminal process, *see Krashes v. White, supra,* 275 Md. at 556, 341 A.2d at 802, it seems that in the instant matter criminal process was initiated by Wood's arrest. The preparation on the day of arrest, April 27, 1977, of a statement of charges indicates that there was no arrest warrant preceding the actual arrest. *See* former Md. District Rule 706 c 3 and d (1977).

1980); *Nelson v. National Casualty Co.,* 179 Minn. 53, 228 N.W. 437 (1929); *Kirk v. U.S. Fidelity & Guaranty Co.,* 59 So.2d 845 (Miss.1952); and *Melton v. Rickman,* 225 N.C. 700, 36 S.E.2d 276 (1945). While there was evidence in the instant matter which would support application of that principle in instructions, the evidence was not uncontradicted.

■ The answer to Palmer Ford's argument lies in the timing of the events. Mrs. Wood said that Kirby had telephoned her at work and requested that they meet. Her estimate of the date was "about April 27." She met Kirby at Palmer Ford "the same day after work. It was in the late afternoon." The jury could find that this meeting took place after Wood's arrest at 1:00 p.m. on April 27 and thus after criminal prosecution had been commenced. It is at that meeting that Kirby was said to have demanded payment or Wood "would go to jail." We hold that the motion for a directed verdict was properly denied on Plaintiff's abuse of process claim.[8]

A remand is necessary for a new trial, limited to the issue of damages, on the abuse of process claim. The jury verdict, and the remittitur thereon, do not allocate compensatory or punitive damages between the malicious prosecution and the abuse of process claims. They are independent torts. *See Walker v. American Security & Trust Co., supra,* 237 Md. at 87, 205 A.2d at 306. We do not have before us the question of damages which may be proximately caused by an abuse of process. However, there can be distinctions between damages allowable in malicious prosecution and in abuse of process. For one example, this jury considered testimony as to the expenses incurred by Wood for counsel fees in the defense of the criminal proceeding, an item of special dam-

---

8. The receipt issued by Palmer Ford recites that the payment was from Wood. It is immaterial whether Mrs. Wood gave or loaned to her son the funds which she delivered to Palmer Ford for him. The person from whom payment was extracted through use of the criminal prosecution was the Plaintiff.

age in malicious prosecution. But there was probable cause for the prosecution and costs of defending the criminal case are not, under those circumstances, recoverable in abuse of process. *See McGann v. Allen, supra,* 105 Conn. 177, 134 A. 810.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, WITHOUT FURTHER PROCEEDINGS, ON THE MALICIOUS PROSECUTION CLAIM. JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED AS TO LIABILITY ON THE ABUSE OF PROCESS CLAIM. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT REMANDING THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR THE ENTRY OF A JUDGMENT IN FAVOR OF PALMER FORD, INC. ON THE MALICIOUS PROSECUTION CLAIM, OF A PARTIAL JUDGMENT AS TO LIABILITY IN FAVOR OF FRANKLIN E. WOOD ON THE ABUSE OF PROCESS CLAIM, AND FOR A NEW TRIAL ON THE ISSUE OF DAMAGES ON THE ABUSE OF PROCESS CLAIM. COSTS TO BE EVENLY DIVIDED BETWEEN THE PARTIES.