28 F.3d 1210
 RICO Bus.Disp.Guide 8603
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John W. LYON; Eleanor L. Lyon; Ronald L. Williams, in his
capacity as Trustee of the Cub Trust, Plaintiffs-Appellants,
v.
Larry A. CAMPBELL; Yvonne E. Campbell; Edward W. Storke,
Individually and in his Capacity as Trustee of the Joan
Trust; Barry R. Strohm; Robert P. Jenkins; Joan Campbell
Marcum, Defendants-Appellees,
and Manus H. PERKINS; Donald L. Davidson, Defendants.
 No. 93-1570.
 United States Court of Appeals, Fourth Circuit.
 Argued: February 9, 1994.
Decided: July 15, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-92-3696)
 ARGUED: Reuben Andrew Guttman, Elliott, Vanaskie & Riley, Blue Bell, PA, for Appellants.
 Judah Lifschitz, Shapiro, Lifschitz & Schram, P.C., Washington, DC., for Appellees.
 ON BRIEF: Brian P. Kenney, Ann M. McGill, Elliott, Vanaskie & Riley, Blue Bell, PA; Ronald Shur, Blue Bell, PA; Jerome C. Schaefer, O'Brien, Birney & Butler, Chevy Chase, MD; Robert Saltzstein, Spiegel & McDiarmid, Washington, DC., for Appellants.
 Carol L. O'Riordan, Emmett J. McGroarty, Shapiro, Lifschutz & Schram, P.C., Washington, DC., for Appellees.
 Before LUTTIG, Circuit Judge, CHAPMAN, Senior Circuit Judge, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.
 AFFIRMED.
 OPINION
 PER CURIAM:
 
 
 1
 John Lyon, Eleanor Lyon, and Ronald Williams (collectively "the Lyons") filed suit against Larry Campbell, Yvonne Campbell, Edward Storke, Manus Perkins, Barry Strohm, Robert Jenkins, Joan Campbell Marcum, and Donald Davidson (collectively "the Campbells") seeking recovery for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.Sec. 1961, et seq., and on various state common law grounds. The district court dismissed the RICO action pursuant to Fed.R.Civ.P. 12(b)(6), finding that the Lyons had failed to establish a pattern of racketeering activity. The district court then dismissed the remaining state law claims. Although Rule 12(b)(6) motions should be granted sparingly, after a review of the lengthy and fact-laden complaint in this case, we find no error in the district court's decision and affirm.
 
 I.
 
 2
 Taking the facts in the complaint as true and construing them in the light most favorable to the Lyons, we summarize the complaint as follows.
 
 
 3
 In October of 1980 John Lyon and Larry Campbell formed Millville Quarry, Inc. ("MQI") for the purpose of mining a limestone quarry site in West Virginia. At that time, Lyon and Campbell agreed that each would own 40% of the shares of MQI, while Manus Perkins, president of MQI, would own the remaining 20%. In 1984, Lyon, Campbell, and Perkins all agreed to transfer some of their stock to four employees of MQI: Edward Storke, Barry Strohm, Robert Jenkins, and Donald Davidson. The resulting stock allocation provided Lyon and Campbell each with 32% of the shares, Perkins with 16% of the shares, and each of the employees with 5%. At that time, Lyon and Campbell agreed that if an employee-shareholder left MQI's employ, Lyon and Campbell would each reacquire half of the departing employee's shares so as to maintain their equal ownership of the company.
 
 
 4
 Lyon, Campbell, and Perkins all transferred their shares to family trusts. The Cub Trust received Lyon's stock in trust for Mr. and Mrs. Lyon. The Joan Trust received Campbell's stock in trust for Mr. and Mrs. Campbell. Finally, between approximately 1982 and 1986, the Perkins Family Trust received Perkins' shares in trust for Perkins and members of his family.
 
 
 5
 According to the complaint, in June 1986 Campbell created a voting trust of all outstanding shares except Lyon's, resulting in Campbell's controlling 68% of the shares. Campbell was then elected president and a member of the board of directors and, allegedly, controlled the affairs of MQI and, ultimately, its successor corporation, MQI Liquidating Corporation, Inc. ("MQI Liquidating"). After Campbell gained control of the corporation, the alleged acts of self-dealing, misappropriation of corporate opportunities, and fraud, on which the Lyons' RICO claims are based, began.[1]
 
 Self-Dealing
 
 6
 Campbell and Perkins had financial interests in Shenandoah Concrete, Inc. Audits of MQI trucking operations revealed the diversion of MQI's assets to Shenandoah with Perkins' knowledge. Specifically, MQI employee time, limestone, trucks, and fuel were all provided to Shenandoah without compensation. In 1986 Perkins was forced to resign as President of MQI. Although Lyon sought further action against Perkins for his activities, Campbell prevented it through the use of his voting trust. Furthermore, without the Lyons' knowledge, MQI provided limestone to Shenandoah without compensation from 1986 until MQI was sold in 1990.
 
 
 7
 Additionally, in 1985 Fort Meade Aggregates, Inc. ("Fort Meade"), a company partially owned by the Campbells, purchased distribution facilities leased by MQI. After purchasing the facilities, Fort Meade substantially increased the rent it charged MQI for their use. The Campbells also "loaned" MQI corporate funds to Shenandoah Concrete and Fort Meade. These loans were never repaid. Finally, the Lyons assert that the Campbells engaged in self-dealing involving the assets of MQI Liquidating by selling certain inventory and equipment to a company they owned at below-market prices.
 
 
 8
 Misappropriation of Corporate Opportunities
 
 
 9
 According to the complaint, MQI initially leased land necessary for the quarry with the intent to purchase the land as soon as it became available. In 1988 a portion of the land became available for purchase. Campbell and his associates acquired the land without providing notice or an opportunity to purchase to MQI or the Lyons. It was further alleged that the Campbells assisted a competitor of MQI in obtaining a permit to mine lands adjacent to MQI's quarry. In so doing, the Campbells assisted the competitor in mining the property by providing equipment and services as well as use of MQI's terminals. It was later discovered that Campbell had an interest in the competitor.
 
 
 10
 In addition, the complaint alleges that Campbell used MQI funds to acquire an interest in the adjacent property and in other quarries that subsequently became available. In all of these acquisitions, Campbell failed to provide MQI or the other shareholders with the opportunity to invest in the quarries or approve the transactions.
 
 Fraud
 
 11
 As stated above, Perkins was forced to resign in 1986 when certain inappropriate transactions came to light. In accordance with the original agreements between Lyon and Campbell, Perkins' shares were to be divided equally between them. Campbell instead conspired with Perkins to transfer all of Perkins' shares to the Joan Trust, Campbell's family trust. This transfer was concealed from the Lyons until MQI was sold in 1990. Campbell acquired more shares in 1988 by purchasing Davidson's 5% and registering them in his daughter's name, Joan Campbell Marcum.
 
 
 12
 Finally, by engaging in this activity, Campbell fraudulently concealed the activities from Lyon and forced him to agree to certain transactions under duress. Specifically, in 1989 Campbell pressured Lyon into entering into a Confidentiality and Standstill Agreement. The essence of this agreement was to allow Campbell to negotiate the sale of MQI without interference from Lyon. The agreement also provided that Campbell was immune from liability for any actions taken or statements made in the course of negotiation or sale. The agreement also contained a waiver and release of almost all of Lyon's claims against Campbell.
 
 II.
 
 13
 We review de novo a district court's decision to dismiss a complaint under Rule 12(b)(6). Mylan Lab. v. Matkari, 7 F.3d 1130 (4th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1307 (1994). Taking all factual allegations of the complaint as true and in a light most favorable to the plaintiff, we will affirm a dismissal pursuant to Rule 12(b)(6) "if it appears that the plaintiffs would not be entitled to relief under any facts which could be proved in support of their claim." Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991), cert. denied,--U.S.--, 112 S.Ct. 1475 (1992); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Mylan Lab., 7 F.3d at 1134. Accordingly, Rule 12(b)(6) motions should be granted sparingly. Mylan Lab., 7 F.3d at 1134; Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir.1989). However, in light of the factually detailed complaint in this case, we agree with the district court that the Lyons would not be entitled to relief under RICO.
 
 
 14
 All RICO claims require the plaintiff to establish a"pattern of racketeering activity." 18 U.S.C. Sec. 1962 (1984). To establish a pattern, the plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original). Related activity includes predicate acts "that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J. Inc., 492 U.S. at 240 (quoting 18 U.S.C. Sec. 3575(e)) (internal quotation marks omitted).
 
 
 15
 A pattern of racketeering activity also requires that the "predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." H.J. Inc., 492 U.S. at 240 (emphasis in original). Continuity refers to either "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. To establish continuity, a party must prove either the threat of continuity or "a series of related predicates extending over a substantial period of time." H.J. Inc., 492 U.S. at 242. Finally, in evaluating the existence of a pattern under either prong, the court is required to take a "commonsensical, fact-specific approach to the pattern requirement." Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989) (citing H.J. Inc., 492 U.S. at 242).
 
 
 16
 In Menasco, we addressed the application of the continuity requirement in a similar context. There, the alleged RICO violations arose out of an oil business venture. In addition to their RICO claims, the Menasco plaintiffs alleged deceit, breach of contract, and negligent misrepresentation. The district court dismissed the action pursuant to Rule 12(b)(6) for failure to allege a pattern of racketeering activity. We agreed after concluding that the plaintiffs failed to establish a pattern because the "[d]efendants' actions were narrowly directed towards a single fraudulent goal." Menasco, 886 F.2d at 684. Specifically, "[t]hey involved a limited purpose: to defraud [the companies] with respect to their oil interests. They involved but one perpetrator: [the defendant]. They involved but one set of victims...." Id. at 684.
 
 
 17
 The case at hand is substantially similar. The detailed allegations of the complaint fail to establish the continuity requirement of a pattern of racketeering activity. The Lyons allege that the Campbells intended to defraud MQI and MQI Liquidating of its assets and, in the process, injure the Lyons' ownership interest in the companies. The Campbells succeeded in gaining control of the companies, diverted corporate opportunities, and engaged in self-dealing. Although the acts of concealment continued between August 1986 and February 1992, the majority of the alleged fraudulent activity took place between March and October of 1986. Indeed, the majority of the predicate acts identified in the complaint took place in that sevenmonth period. The remaining predicate acts were sporadic at best. Moreover, unlike the plaintiff in Menasco, the Lyons have not claimed that there are other victims of the Campbells' fraud; nor have they alleged "past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. As we stated in Menasco, "[i]f the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim." Menasco, 886 F.2d at 685 (citing Flip Mortgage Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir.1988)). Accordingly, we conclude that the Lyons have failed to establish a pattern of racketeering activity and affirm.[2]
 
 III.
 
 18
 For the foregoing reasons, we affirm the decision of the district court.[3]
 
 AFFIRMED
 
 
 [1]
 The complaint primarily alleges violations of RICO as well as common law fraud, conversion, conspiracy, and breach of fiduciary duties. In support of the RICO claims, the Lyons identified approximately forty specific predicate acts. These include interstate use of the mails and telephone, mainly from March 1986 to October 1986, in furtherance of the alleged fraud. The complaint also identifies isolated instances of activity in 1988, 1990, and 1991. However, the majority of the predicate acts took place in the seven-month period in 1986
 
 
 [2]
 The Campbells also urge this court to conclude that the Lyons have no standing under RICO to maintain this action. In light of our conclusion on the merits we will not address the issue in depth. We note, however, that generally, "[a] shareholder ... does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock." Manson v. Stacescu, 11 F.3d 1127, 1131 (2d Cir.1993). A shareholder may not maintain a claim under RICO for diminution in value of his stock. See Rylewicz v. Beaton Servs., Ltd., 888 F.2d 1175 (7th Cir.1989). A shareholder may maintain an action under RICO, however, "where the injury sustained by the shareholder is separate and distinct from that sustained by other shareholders." Manson, 11 F.3d at 1131. The Lyons' claims are primarily for the diminution in value of stock. However, the complaint includes allegations of actions by the Campbells that caused the Lyons "separate and distinct" harm that would afford standing
 
 
 [3]
 Because the RICO claim was the sole basis for federal jurisdiction, we find the district court's dismissal of the pendent state law claims was proper