653 A.2d 491

**Bernard W. HUMPHREY, Jr., et al.**

v.

**Van K. HERRIDGE, et al.**

**No. 642, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Feb. 6, 1995.

Paul F. Newhouse, Towson, for appellants.

Alvin I. Frederick (James E. Dickerman and Eccleston and Wolf, on the brief), Baltimore, for appellees.

Argued before MOYLAN, BISHOP and BLOOM, JJ.

BISHOP, Judge.

Appellee, Van K. Herridge, obtained summary judgment against appellants, Bernard W. Humphrey, Jr., and Peggy K. Humphrey, in the amount of $194,607.68, plus interest. Herridge's attorneys, Stephen H. Kehoe and the law firm of Ewing, Dietz, Turner & Kehoe ("the Law Firm") filed a writ of execution by levy, on behalf of Herridge, in the Circuit Court for Talbot County. The Talbot County Sheriff executed the writ and levied upon the Humphreys' residence. The Humphreys filed for bankruptcy, thereby staying the judgment and the levy. The Humphreys and James Wooten, trustee of the Humphreys' bankruptcy estate, filed a complaint against Herridge, alleging abuse of process, trespass, conversion, and intentional infliction of emotional distress. The Law Firm filed a motion to intervene in the proceedings, to which appellants consented. The Law Firm and Herridge later filed motions to dismiss, or in the alternative, motions for summary judgment. The Humphreys filed an amended complaint, adding Stephen H. Kehoe as a defendant, and alleging

claims of abuse of process and trespass against Kehoe. The amended complaint also alleged that the Law Firm was vicariously liable for Kehoe's actions. Kehoe and the Law Firm filed another motion to dismiss, or in the alternative, motion for summary judgment, which, after a hearing, the trial court granted, along with Herridge's previously filed motion to dismiss.

## Issues

The Humphreys and Wooten raise several issues, which we rephrase and consolidate:

I. Does the amended complaint state a claim for abuse of process?

II. Is it an abuse of process under a writ of levy to exclude judgment debtors from their real property in accordance with instructions of the plaintiff given to the sheriff, pursuant to Md.Rule 2-641(a)?

III. Does an amended complaint state causes of action for trespass and conversion based on the execution of a writ of levy coupled with instructions to bar debtors from their property?

## Facts

The Humphreys purchased St. Michaels Hardware and Gift Store from Herridge in 1985. The Humphreys financed their purchase by executing a note payable to Herridge in the amount of $210,000, secured by the store's inventory and fixtures. The Humphreys defaulted on the note, and Herridge obtained summary judgment in the amount of $194,-647.68, plus interest. Herridge moved to collect the judgment, directing Kehoe and the Law Firm to file a request for writ of execution by levy. The writ instructed the sheriff to levy upon the Humphreys' residence located at 8490 Bozman–Neavitt Road, St. Michaels, Maryland, and directed the sheriff "not [to] exclude others from access to, or the use of, the levied property." This writ was returned "non est" because the sheriff received a replacement writ, instructing the sheriff

to levy upon the property "located in Talbot County at 8940 [sic] Bozman–Neavitt Road" and "[to] exclude others from access to, or the use of, the levied property." The sheriff served the replacement writ and levied the property. Kehoe later accompanied the sheriff to the property and assisted in placing padlocks on the Humphreys' home. In order to regain access to their property, the Humphreys sought relief by filing for bankruptcy.

The Humphreys then filed suit against Herridge, Kehoe, and the Law Firm, alleging wrongful use of a writ of execution to achieve ulterior purposes, inconsistent with the proper and orderly execution of a writ. Specifically, the Humphreys assert that, by executing the writ, appellees sought to "cause them deprivation, humiliation and inconvenience[,]" and "to coerce them into immediately paying the judgment ..., or at least to file bankruptcy." According to the Humphreys, in the course of the execution of the writ, appellees assisted the sheriff in wrongfully removing the Humphreys from their property and locking them out of their home. The Humphreys assert that these actions were undertaken after the issuance of the writ and amounted to trespass and conversion.

*Discussion*

Standard of Review

The trial court dismissed, with prejudice, the Humphreys' complaint pursuant to Rule 2–322(b)(2). "In reviewing that judgment, we assume the truth of all relevant and material facts well pleaded and all inferences which can be reasonably drawn from those facts." *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 333, 624 A.2d 496 (1993). "[A]ny ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action[, however,] must be construed against the pleader." *Figueiredo–Torres v. Nickel*, 321 Md. 642, 647, 584 A.2d 69 (1991) (quoting *Sharrow v. State Farm Mut. Auto. Ins., Co.*, 306 Md. 754, 768, 511 A.2d 492 (1986)).

## I. & II.

█ " 'The tort of abuse of process occurs when a party has wilfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by the law.' " *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 411, 494 A.2d 200 (1985) (quoting *Krashes v. White*, 275 Md. 549, 555, 341 A.2d 798 (1975)). To sustain an action for abuse of process, the claimant must prove (1) the wilful use of process for an illegal purpose; (2) an ulterior motive underlying the use of process; and (3) damages resulting from the perverted use of process. *See Berman v. Karvounis*, 308 Md. 259, 262, 518 A.2d 726 (1987); R.P. Gilbert, P.T. Gilbert & R.J. Gilbert, *Maryland Tort Law Handbook*, § 5.0 (1986).

"[T]his second element of the tort requires '[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process. . . .' " *Berman*, 308 Md. at 265, 518 A.2d 726 (quoting W. Prosser, *Handbook of the Law of Torts*, § 121 at 857 (4th ed. 1971)). "[I]n *Palmer Ford, [Inc. v. Wood*, 298 Md. 484, 471 A.2d 297 (1984),]* the tort was established because there was evidence to support a finding that criminal process had been used as a coercive tactic to collect a civil debt." *Berman*, 308 Md. at 265, 518 A.2d 726. In *Berman*, however, the Court of Appeals determined that the tort of abuse of process was not alleged because

> there [were] no facts to show how the process was used for any purpose other than the normal one of obtaining personal jurisdiction over the appellants. Appellants have failed to allege in what manner process was used in some abnormal fashion "to coerce/extort money and/or property from" them.

*Id.*

█ Because we are dealing with a motion to dismiss in the case *sub judice*, "we consider . . . allegations of fact and inferences deducible from them, not merely conclusory charges." *Id.* Here, the alleged abuse of process arises out of the issuance of a writ of execution directing the sheriff to

levy upon the Humphreys' real property in order to satisfy the money judgment obtained by Herridge. According to the Humphreys' complaint,

> Mr. Herridge intentionally utilized the improper and irregular use of the Writ described above in order to obtain satisfaction of ulterior motives. Mr. Herridge harbored actual malice toward the Humphreys and sought to injure them by ejecting them from their home. He wished to punish the Humphreys for defaulting on the note he held. In addition, Mr. Herridge sought to use ejectment of the Humphreys from their home to force them into bankruptcy, or if the Humphreys did not pay immediately or file bankruptcy, to cause them to suffer gratuitous deprivation and humiliation. Mr. Herridge intended as well as to harass the Humphreys and cause them fear, grief and inconvenience by removing them, from their home without notice and barring them from access to their possessions.

In *Berman,* the Court of Appeals explained that no liability for abuse of process exists " 'where the defendant has done no more than carry out the process to its authorized conclusion, even though with bad intentions.' " *Id.* at 265, 518 A.2d 726 (quoting W. Prosser, *Handbook of the Law of Torts,* § 121 at 857 (4th ed. 1971)). In the case *sub judice,* the Humphreys fail to show how the process was used for any purpose other than the normal one of obtaining satisfaction of the judgment against them.

■ Pursuant to Rule 2–641(a), the request for a writ of execution

> shall be accompanied by instructions to the sheriff that shall specify (1) the judgment debtor's last known address, (2) the judgment and the amount owed under the judgment, (3) the property to be levied upon and its location, and (4) whether the sheriff is to leave the levied property where found, or to exclude others from access to it or use of it, or to remove it from the premises. The judgment creditor may file additional instructions as necessary and appropriate and deliver a copy to the sheriff.

The Humphreys assert that the language used in subsection (4) of Rule 2–641(a) refers only to the personalty of the judgment debtor and, therefore, appellees had no authority to instruct the sheriff to exclude them from access to or the use of their home. We disagree. Rule 2–641(a) sets forth general provisions for the issuance and content of a writ of execution. Rule 1–202(u) defines the term "property," as used in the Rule 2–641, to include "real, personal, mixed, tangible or intangible property of every kind." Rule 1–202(u). That definition applies "except as expressly otherwise provided or as necessary implication requires." Rule 1–202. Rule 2–641(a) neither expressly provides that the term "levied property" as used in subsection (4) includes only personal property, nor does it necessarily imply such an interpretation. To adopt the Humphreys' suggested interpretation requires that subsections (1), (2), and (3) be interpreted to apply only to the judgment debtor's personal property as well.

Rule 2–641(a) sets forth the general requirements for the issuance of a writ of execution. A writ of execution may direct the sheriff to levy upon real or personal property. Additionally, in Rules 2–642, 2–643, and 2–644, the word "real" or "personal" modifies the term "property" when such distinction is necessary. We conclude, therefore, that the term "property," as used in the rule, embraces both the real and personal property of the judgment debtor.

When nothing more than carrying out the process to its authorized conclusion has occurred, no cause of action for abuse of process exists. In *Palmer Ford, Inc. v. Wood,* 298 Md. 484, 471 A.2d 297 (1984), the Court of Appeals held improper the use of process by "[a] creditor, or an officer of the law [firm] acting in concert with the creditor, to demand payment of a debt as a condition of the debtor's avoiding arrest, or further confinement, or further proceedings in a criminal prosecution." *Id.* at 512, 471 A.2d 297. The Court recognized that, to maintain a claim for abuse of process, the claimant must show "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process required." *Id.* at 511, 471 A.2d 297

(quoting W. Prosser, *Handbook of the Law of Torts*, § 121 at 857 (4th ed. 1971)).

Contrary to the circumstances in *Palmer*, the sheriff in the case *sub judice* lawfully used the writ of execution to remove and exclude the Humphreys from their residence. Rule 2–641(a)(4) permits under the writ of execution an instruction to the sheriff to exclude others from access to the levied property. The obvious and proper purpose of the issuance of the writ in this case was to collect from the Humphreys the amount owing on the note. The summary judgment entered in Herridge's favor entitled Herridge to the payment of the note. We hold, therefore, that, by requesting a writ of execution directing the sheriff to levy upon the Humphreys residence and exclude them from their property, appellees made proper use of the process in a manner contemplated by law.

### III.

■ In light of the discussion, *supra*, we also hold that the trial court properly dismissed the Humphreys' claims for trespass to real property. "Every *unauthorized* entry upon the property of another is a trespass which entitles the owner to a verdict for some damages." *Brazerol v. Hudson*, 262 Md. 269, 273, 277 A.2d 585 (1971) (quoting *Patapsco Loan Co. v. Hobbs*, 129 Md. 9, 15, 98 A. 239 (1916)). "A general privilege[, however,] applies to an attachment issued upon a judgment regularly entered by a court of competent jurisdiction, even though the judgment may later be set aside or reversed because of error on the part of the judge." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 413, 494 A.2d 200 (1985). Neither party questions the propriety of the summary judgment entered against the Humphreys. That judgment entitled Herridge to levy against the Humphreys' real property in order to collect the money owed. Appellees' interference with the Humphreys' possessory interest in their real property was, therefore, authorized, and appellees cannot be held liable for trespass.

## IV.

■ Regarding the Humphreys' claim for conversion, however, we hold that the trial court erred. The Humphreys allege that, by excluding them from their home,

> Mr. Herridge intended to exercise dominion and control over [their] chattels ... and did so. Mr. Herridge had not requested a Writ of Execution with respect to those chattels, and those chattels were not in the custody of the court. The dominion and control exercised over those chattels by Mr. Herridge was inconsistent with [their] rights.... Mr. Herridge acted with malice and with the intention to injure and damage the Humphreys.

The Humphreys assert that Herridge had no entitlement to the personal property located inside their residence because the writ of execution instructed the sheriff to levy only against their real property.

The tort of conversion "may consist of the wrongful deprivation of the use of goods, and it is not necessary to show a conversion to the use of the defendant." *Keys*, 303 Md. at 414 n. 8, 494 A.2d 200. In *Kirby v. Porter*, 144 Md. 261, 263, 125 A. 41 (1923), the appellee filed a complaint alleging that the appellant converted "to her use ... [appellee's] lot of household furniture...." The appellee, who lived in a part of the appellant's house, had a heated argument with the appellant, and the appellant took steps to preclude the appellee's entrance to her home. At this time, the appellee had several items of furniture, belonging to him, inside the house. Despite the appellee's request that he be allowed to enter the house to remove his belongings, the appellant refused to unlock the door to the house. The appellee filed suit against the appellant for conversion. The Court held that the appellee alleged legally sufficient facts to justify a recovery for the tort of conversion. The Court held that the tort of conversion consists either "in the defendant's converting *to his own use* the plaintiff's goods, or ... in wrongfully depriving the plaintiff of their use, even without converting them to his own use...." *Kirby*, 144 Md. at 266, 125 A. 41. According to the

Court, the appellee sufficiently stated a cause of action for conversion because

> in *Chitty, Pleading,* vol. 1, page 135 (5th Am.Ed.), it is said: The injury lies in the conversion and deprivation of the plaintiff's property, which is the gist of the action, * * * and the fact of the conversion does not necessarily import an acquisition of property in the defendant; * * * and it is for the recovery of damages to the value of the thing converted, and not the thing itself, which can only be recovered by action of detinue or replevin. . . . No damages are recoverable for the act of taking, all must be for the act of converting. This is the tort of maleficium and to entitle the plaintiff to recover, two things are necessary: 1st, property in the plaintiff; 2ndly, a wrongful conversion by the defendant.

*Id.* at 266–67, 125 A. 41.

" '[T]he tort of conversion has been confined to those major interferences with the chattel, or with the plaintiff's rights in it, which are so serious, and so important, as to justify the forced judicial sale to the defendant which is the distinguishing feature of the action.' " *Keys,* 303 Md. at 415, 494 A.2d 200 (quoting W. Keeton, *Prosser & Keeton on Torts,* § 15 (5th ed. 1984)). Conversion involves "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Keys,* 303 Md. at 414, 494 A.2d 200 (quoting W. Keeton, *Prosser & Keeton on Torts,* § 15 (5th ed. 1984). In *Keys,* the appellant alleged that the appellee "wrongfully deprived [her] of the use of her wages for [more than a week]." *Id.* The Court held that, similar to the situation in *Kirby v. Porter, supra,* "the evidence was sufficient to permit the jury to find an interference of sufficient seriousness to amount to a conversion." *Keys,* 303 Md. at 415, 494 A.2d 200.

In the case *sub judice,* the Humphreys contend that Herridge wrongfully deprived them of the use of their personal property for a period of time. The facts alleged demonstrate that, by placing padlocks on the doors of the Humphreys'

home, Herridge, through his agents, wrongfully precluded the Humphreys from the use and enjoyment of their personal property located inside their home. Whether the Humphreys may successfully litigate this claim is, at this point, immaterial. The Humphreys' claim against Herridge for conversion states a cause of action upon which relief may be granted and, therefore, with regard to this claim, we hold that the trial court should not have granted Herridge's motion to dismiss.

### Conclusion

In summary, we hold that the trial court correctly dismissed the Humphreys' claims for abuse of process and trespass to real property. Regarding the claim for conversion against Herridge, however, we hold that the trial court erred. The facts surrounding the execution of the Writ and the removal of the Humphreys from their home are vague. Whether the Humphreys requested access to their belongings and were denied an opportunity to collect them is uncertain from the record. We note, therefore, that, although the Humphreys alleged sufficient facts to state a cause of action upon which relief may be granted, they still must prove damages and demonstrate that appellees denied them access to their belongings.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR TALBOT COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. TWO–THIRDS OF THE COSTS TO BE PAID BY APPELLANTS; ONE–THIRD OF THE COSTS TO BE PAID BY APPELLEES.**