UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LARRY A. CAMPBELL; EASTERN
KENTUCKY RESOURCES; BLUE ASH
DEVELOPMENT, INCORPORATED,
            *Plaintiffs-Appellants,*

and

THE JOAN CAMPBELL TRUST, by its
trustee, Larry A. Campbell; J.
MILLER ESHLEMAN & SON,
INCORPORATED; EXECUTIVE
PROPERTIES, INCORPORATED,
            *Plaintiffs,*

v.                                         No. 00-2275

JOHN W. LYON,
            *Defendant & Third Party
                Plaintiff-Appellee,*

v.

THE CHUBB CORPORATION; PACIFIC
INDEMNITY COMPANY, a subsidiary of
The Chubb Corporation,
            *Third Party Defendants.*

REUBEN GUTTMAN,
                        *Movant.*

Appeal from the United States District Court
for the District of Maryland at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-97-904-AW)

Argued: September 24, 2001

Decided: December 27, 2001

Before MICHAEL, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge Traxler wrote an opinion concurring in part and dissenting in part.

## COUNSEL

**ARGUED:** Arnold Murray Weiner, SNYDER, WEINER, WELT-CHEK, JACOBS & SLUTKIN, Baltimore, Maryland, for Appellants. Barry Coburn, COBURN & SCHERTLER, Washington, D.C., for Appellee. **ON BRIEF:** Thomas J. Zagami, Lynn Edwards Brenneman, HODES, ULMAN, PESSIN & KATZ, P.A., Towson, Maryland, for Appellants.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Larry Campbell, Eastern Kentucky Resources ("EKR") and Blue Ash Development, Inc. ("Blue Ash") (collectively, "Campbell") filed this suit against John Lyon,[1] Campbell's former business associate, alleging various counts of invasion of privacy, tortious interference with business and economic relations, abuse of process, and conspiracy. Campbell claims that Lyon organized and directed the dissemina-

---

[1]Campbell captioned his appellate briefs as "Larry A. Campbell *et al* v. John W. Lyon v. The Chubb Corporation; Pacific Indemnity Company and Reuben Guttman." It is unclear why he did so, as he did not name Chubb, Pacific Indemnity, or Guttman in his Complaint. They are not parties to this appeal.

tion of private, harmful, and/or false information about him to third parties who conspired with Lyon by further disseminating the information to members of the public. Campbell claims that Lyon's activities caused the failure of a landfill project in Magoffin County, Kentucky, in which Campbell was the principal investor.

Campbell appeals the district court's decision granting summary judgment to Lyon. We affirm.

I.

The Magoffin County landfill project began in September 1991, when EKR formed a joint venture with Blue Ash and Royalton Resources ("Royalton") for the purpose of developing and operating a municipal solid waste landfill in Magoffin County. William Polan was affiliated with Royalton and, ultimately, Campbell alleged that Polan misused substantial amounts of the joint venture's funds. The parties eventually terminated the joint venture and removed Polan from the project.

Campbell alleges that Lyon and Polan formed a conspiracy to effectuate the failure of the landfill project by spreading inflammatory information about Campbell. Campbell claims that Lyon, through Polan, disseminated copies of a complaint filed against Campbell, disseminated Campbell's criminal record, that Lyon made lump sum payments to Polan or Polan's wife totaling approximately $50,000, that Lyon caused the arrest of an EKR official during an open house event intended to promote the landfill project, and that Polan generally made defamatory statements about Campbell.[2]

On March 24, 1998, Campbell voluntarily withdrew four tortious interference and conspiracy claims. Upon Lyon's motion for summary judgment, the district court granted summary judgment against Campbell's remaining tortious interference claims, explaining that Campbell failed to show that Lyon's actions resulted in the landfill project's failure. The court held that the project more likely than not failed because of grass-roots opposition to the project, Campbell's

---

[2]Campbell did not name Polan as a defendant in this suit.

inability to obtain regulatory approval, and a Kentucky Supreme Court ruling invalidating the agreement between Magoffin County and Campbell to develop the landfill. The district court also granted summary judgment against Campbell's invasion of privacy claims, explaining that the information Lyon allegedly disseminated about Campbell was true and public. Finally, the district court granted summary judgment against Campbell's abuse of process claims. Campbell claimed that Lyon previously filed a RICO action in Maryland federal court and abused that process by providing copies of the complaint to third parties. The district court rejected this claim, stating that it was "merely a regurgitation of the invasion of privacy and tortious interference claims." *Campbell v. Lyon*, Civil Action No. AW-97-904, Mem. Op. at 15 (D. Md. 2000). The court also noted that no authority exists for the proposition "that the mere dissemination of public documents filed in court constitutes sufficient basis for an abuse of process claim." *Id.*

## II.

We review a grant of summary judgment *de novo*. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate only when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is in dispute when its existence or non-existence could lead a jury to different outcomes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. *Id.* Mere speculation by the non-moving party cannot create a genuine issue of material fact. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court must view the evidence in the light most favorable to the non-moving party, which, in this case, is Campbell. *Smith v. Virginia Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996).

## III.

To establish a tortious interference claim under Maryland law,[3] a

---

[3]The parties agree that Maryland law applies to this dispute.

plaintiff must prove: (1) that the defendant committed an "'intentional and wilful act[ ];'" (2) that was "'calculated to cause damage to the plaintiffs in their lawful business;'" (3) was "'done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice);'" and (4) that "'actual damage and loss result[ed].'" *Willner v. Silverman*, 71 A. 962, 964 (Md. 1909) (quoting *Walker v. Cronin*, 107 Mass. 555, 562 (1871)). *See also Lyon v. Campbell*, 707 A.2d 850 (Md. App. 1998) (same). To establish causation in a tortious interference action, a plaintiff must prove that the defendant's wrongful or unlawful act caused the harm done to the business that was the target of the interference. *Alexander v. Evander*, 650 A.2d 260, 269 (Md. 1994). *See also Macklin v. Logan Associates*, 639 A.2d 112, 119 (Md. 1994) ("to be actionable, the improper or wrongful conduct must induce the breach or termination of the contract").

The district court correctly ruled that other factors, rather than Lyon's actions, brought about the end of Campbell's involvement in the landfill project. As the district court explained,

> there was no shortage of community attention to an involvement in the trash landfill issue. The proposed project appears to have been a highly politically charged issue. In fact, the grass-roots opposition to the project, its inability to obtain regulatory approval, and the Kentucky Supreme Court's ruling (that the agreement between the county and EKR was not a valid agreement) are the likely causes of the landfill project's failure.

*Campbell*, Mem. Op. at 9.

In *Eastern Kentucky Resources v. Arnett*, 934 S.W.2d 270 (Ky. 1996), the Kentucky Supreme Court voided the agreement between EKR and Magoffin County to build the landfill. It is undisputed that Lyon was not involved in that litigation in any way. Additionally, it is undisputed that Campbell never tried to renegotiate the agreement after the decision, thereby effectively ending Campbell's involvement with the landfill project. Finally, it is undisputed that the landfill faced extensive grass-roots opposition, with more than 6,000 people signing petitions opposing the landfill. In light of these undisputed facts,

Campbell cannot prove that Lyon's alleged wrongful acts were the acts that more likely than not caused the demise of the landfill project. That demise was more likely than not caused by other factors, including the Kentucky Supreme Court's decision. Thus, summary judgment was appropriate against Campbell's tortious interference claims.

IV.

Campbell purports to make two types of invasion of privacy claims: one for false light invasion of privacy and another under § 652D of the Restatement (Second) of Torts for "unreasonable publicity given to the other's private life." Summary judgment was appropriate as to both.

A.

To state a claim for false light invasion of privacy, a plaintiff must prove (1) that the defendant gave "publicity to a matter concerning another that places the other before the public in a false light"; (2) that "the false light in which the other person was placed would be highly offensive to a reasonable person"; and (3) that "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Bagwell v. Peninsula Regional Medical Center*, 665 A.2d 297, 318 (Md. App. 1995). As in defamation cases, a defendant in a false light case is entitled to judgment as a matter of law if the statements made are true. *Id.*

Campbell's complaint states that by "disseminating and publicizing information, . . . including Campbell's FBI criminal record, Lyon unreasonably invaded Campbell's privacy by giving publicity to the private facts of Campbell's life." The Complaint further asserts that Lyon "continued to satisfy Polan's thirst for scandalous information about Campbell's background . . . by relating to Polan numerous embellished and grossly exaggerated accounts of mysterious investigations of which Campbell had allegedly been the subject."

As the district court held, the information allegedly disseminated by Lyon about Campbell was both true and public. For example,

Campbell *does* have a criminal record, and that criminal record is a matter of public record.[4] The RICO complaint that Lyon filed against Campbell similarly is a public record. Additionally, while Campbell alleges that Lyon sent Polan other documents to disseminate to the public, he fails to provide any specifics about the documents.

However, Campbell claims that the district court ignored his allegations that Lyon disseminated other, false information about him, including that Campbell wrote bad checks, committed mail fraud, wire fraud, and racketeering, was imprisoned for committing racketeering offenses, was a murderer, was blacklisted from jobs nationwide, was involved in organized crime, and was a career criminal. In support of these allegations, Campbell relies on the affidavits of Timothy Weddington and Angela Siegel Clark.

However, the Weddington and Clark affidavits are inadmissible hearsay. Both relay out-of-court statements allegedly made to the affiants by Polan. Campbell claims the affidavits are admissible under Fed. R. Ev. 801(d)(2)(E), which allows the admission of a hearsay statement against a party if the statement was made "by a coconspirator during the course and in furtherance of the conspiracy." The Rule further states that "[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered[.]"

This Court reviews for abuse of discretion a district court's refusal to admit evidence under Fed. R. Ev. 801(d)(2)(E). *United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992). The Court reviews the district court's factual findings regarding admissibility under the clearly erroneous standard. *United States v. Shores*, 33 F.3d 438 (4th Cir. 1994).[5]

---

[4]Polan, who is accused of disseminating this information on Lyon's behalf, averred in an affidavit that he obtained information about Campbell's criminal record from public sources in Danville, Virginia. Campbell does not point this Court to any evidence to the contrary.

[5]Federal Rule of Evidence 104(a) states that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . . In making its determination it is not bound by the rules of evidence except for those with respect to privileges."

In *Bourjaily v. United States*, the United States Supreme Court explained that a court may not admit a statement under Rule 801(d)(2)(E) without first determining that a conspiracy actually existed between the third party and the party-opponent. 483 U.S. 171, 175 (1987). *See also Blevins*, 960 F.2d at 1255; Fed. R. Ev. 104(a). The existence of a conspiracy must be shown with independent evidence, but may be supplemented by the disputed hearsay statement. *Id.* at 181. The party seeking to admit the statement must prove the existence of a conspiracy by a preponderance of the evidence. *Blevins*, 960 F.2d at 1255.

The district court refused to admit the Weddington and Clark affidavits because Campbell failed to offer independent evidence of a conspiracy. In fact, the only arguably independent evidence Campbell proffered (other than his own conclusory statements) was proof that Lyon gave Polan approximately $50,000. Neither Polan nor Lyon deny that Lyon gave Polan the money, but claim that the money transfers represented a series of collateralized loans, albeit as yet unpaid. Campbell claims the transfers were pay-offs in furtherance of the conspiracy, but fails to advance any evidence in support of this conclusory assertion. As the district court explained, Campbell "has not presented evidence to the Court that the loans were in any way connected to an alleged conspiracy or plot to cause the failure of [Campbell's] business and economic pursuits. . . . [Campbell] present[s] no evidence beyond mere speculation and compilation of inferences." *Campbell*, Mem. Op. at 13. Campbell fails to proffer any independent evidence of a conspiracy. The district court did not abuse its discretion by finding the Weddington and Clark affidavits inadmissible.[6]

---

[6]Campbell also argues that this Court may find the existence of a conspiracy solely by reviewing the disputed hearsay statements themselves. However, the plain language of Rule 801(d)(2)(E) counsels against such an approach. The Rule explicitly states that "[t]he contents of the statement shall be considered *but are not alone sufficient* to establish . . . the existence of the conspiracy[.]" Fed. R. Ev. 801(d)(2)(E) (emphasis added). The Rule plainly states that the disputed hearsay statements, alone, cannot establish the prerequisite conspiracy. *See also United States v. Padilla*, 203 F.3d 156, 161 (2nd Cir. 2000) (an out-of-court statement may not be admitted if the statements themselves are the only evidence of the defendant's participation in a conspiracy); *United States*

Because the affidavits are inadmissible, the allegations contained in those affidavits cannot support a false light invasion of privacy claim. Because these inadmissible affidavits are the only "evidence" Campbell has to support his claim that Lyon told others that Campbell wrote bad checks, committed mail fraud, wire fraud, and racketeering, was imprisoned for committing racketeering offenses, was a murderer, was blacklisted from jobs nationwide, was involved in organized crime, and was a career criminal, summary judgment was appropriate against this claim.

## B.

Section § 652D of the Restatement (Second) of Torts states that

> [o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

To come within this branch of the invasion of privacy tort, the matter disclosed must be a private fact and it must be made public. *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1118 (Md. App. 1986). The requirement that the information publicized be private is rooted in constitutional law. In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), the Supreme Court noted that "even the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record." The First and Fourteenth Amendments prohibit States from

---

*v. Portela*, 167 F.3d 687, 702-03 (1st Cir. 1999) ("While a trial court may consider the contents of the statements at issue as evidence" of a conspiracy, "the determination must rest at least in part on corroborating evidence beyond that contained in the [hearsay] statements at issue"); *United States v. Kelly*, 989 F.2d 980 (8th Cir. 1993) ("in supporting co-conspirator statements . . . the government must provide evidence independent of the challenged statements").

imposing sanctions "on the publication of truthful information contained in official court records open to public inspection." *Id.* at 494-95. Thus, as the *Pemberton* court explained, "[t]here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public." 502 A.2d at 1118. In *Pemberton*, the Maryland court held that "the circulation of court records pertaining to [the appellant's] conviction is Constitutionally protected and cannot, therefore, form the basis of tort liability." *Id.* Similarly, the commentary to § 652D states that "there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record, such as the date of his birth, the fact of his marriage, his military record, the fact that he is admitted to the practice of medicine or is licensed to drive a taxicab, or the pleadings that he has filed in a lawsuit."

Campbell claims that Lyon publicized his criminal record and the RICO complaint. Both documents are public records. Thus, summary judgment was appropriate against Campbell's § 652D claim.

V.

To maintain an abuse of process claim, a plaintiff must prove "(1) wilful use of process for an illegal purpose, (2) with an underlying ulterior motive, and (3) resulting damages." *Humphrey v. Herridge*, 653 A.2d 491, 493 (Md. App. 1995). Abuse of process claims are concerned with "improper use of criminal or civil process in a manner not contemplated by law after it has been issued[.]" *Walker v. American Security & Trust Co.*, 205 A.2d 302, 307 (Md. App. 1964) (internal citations omitted).

Campbell claims that Lyon filed a RICO suit against him on December 31, 1992, which was dismissed by the U.S. District Court for the District of Maryland. Lyon appealed the dismissal order to this Court, which affirmed. *See Lyon v. Campbell*, 28 F.3d 1210, 1994 WL 369453 (4th Cir.) (unpublished). Campbell claims that Lyon filed the suit "for the illegal purposes" of invading Campbell's privacy and tortiously interfering with his business, and for the "ulterior motives of causing [Campbell] to suffer financial ruin, causing the personal and business reputations of [Campbell] to be damaged and causing interference with the conduct of the business affairs of [Campbell]."

In other words, as Campbell states in his appellate brief, Campbell claims that Lyon filed the suit with the ulterior motive of "adopting the dismissed claims as truths, and disseminating the complaint to others in furtherance of their conspiratorial objectives." Appellants' Br. at 51.

The district court held that Campbell's abuse of process claims were "merely a regurgitation of the invasion of privacy and tortious interference claims." *Campbell*, Mem. Op. at 15. Additionally, the court explained that Campbell failed to allege any illegal purpose. *Id.* Indeed, the only allegation Campbell made is that Lyon provided a copy of the RICO complaint to Polan. The mere dissemination of a public document cannot constitute a sufficient basis for an abuse of process claim. Because Campbell failed to establish that the dissemination was somehow illegal, *see Humphrey*, 653 A.2d at 493, summary judgment was appropriate against this claim.

## VI.

For the foregoing reasons, the judgment of the district court is affirmed.[7]

*AFFIRMED*

TRAXLER, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's opinion except as to Part IV, as to which I take a different view. At summary judgment, Campbell presented affidavits from Angela Siegel Clark, the public relations consultant for EKR (a company in which Campbell was a principal) and Timothy Weddington, the President of Salyersville National Bank where EKR banked. These individuals stated that Polan made quite a few statements to them about Campbell's character, his criminal history and his past business dealings. While some of what Polan told them was true and verifiable, there is much that was not. For example, Weddington stated that Polan told him that Campbell was alleged to

---

[7]We have reviewed Campbell's remaining arguments and find them to be equally without merit.

have murdered a business associate, that he had been found guilty of price fixing and was consequently barred from government contracts, and that he had been convicted of RICO violations. *See* J.A. 2780. Weddington also indicated that Polan told him that he, Polan, was working with Lyon to discredit and ruin Campbell. *See* J.A. 2781.

Clark stated Polan told her that Campbell had served time in jail for a RICO violation, that he was a murderer, and that he had been blacklisted from jobs across the United States. *See* J.A. 2793-95. Polan also stated, according to Clark, that he was working with Lyon to hurt Campbell and that Lyon had paid Polan between $200,000 and $300,000 for that purpose. *See* J.A. 2794.

The parties apparently agree that these statements, if indeed made and proven false as Campbell states they are, would support a claim under Maryland law for false light invasion of privacy. *See Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995); *Allen v. Bethlehem Steel Corp.*, 547 A.2d 1105, 1108 (Md. Ct. Spec. App. 1988). However, in order to make such a claim actionable against Lyon, Campbell must be able to tie Polan's statements to Lyon, which Campbell asserts he can do through the Clark and Weddington affidavits, provided they are admissible. I agree that the statements of Clark and Weddington are admissible under Federal Rule of Evidence 801(d)(2)(E).

Rule 801(d)(2)(E) instructs that a statement is not inadmissible hearsay if

> [t]he statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

The statements attributed to Polan by Clark and Weddington provide strong evidence of a conspiracy, but under Rule 801(d)(2)(E) they are not enough in and of themselves. Here, though, the admissibility of this testimony is established by other independent evidence which

corroborates the existence of the conspiracy reflected in Polan's statements. Campbell has produced a substantial number of financial documents showing large and frequent transfers of money from Lyon to Polan and, in some instances, to Polan's *eleven-year-old daughter*. *See* J.A. 2394-2594.

If there were some legitimate relationship between Lyon and Polan to justify the payments, Campbell might fall short on his proof. But here Campbell alleges, and apparently can show, that the only common ground shared by Lyon and Polan was their animosity toward Campbell. The payments from Lyon to Polan and his family between 1993 and 1998 approximated $300,000, *see* J.A. 231-233, 517-519, 856-862, which substantiates Clark's affidavit, and Campbell has evidence that Lyon did not attempt to characterize these payments as "loans" until long after they were made. In my view, the giving of a large amount of money in an extremely suspicious manner is very incriminating and sufficient to corroborate the existence of a conspiracy between Poland and Lyon and to make the statements of Clark and Weddington admissible under Rule 801(d)(2)(E). Because the admission of this evidence would preclude summary judgment against Campbell on his claim for false light invasion of privacy, I respectfully dissent.